In re Bruce Audwin QUINN, Debtor.

Bruce Audwin QUINN, Plaintiff,

v.

FIDELITY FINANCIAL SERVICES,
INC., Defendant.

Bankruptcy No. 86–24326–K.
Adv. No. 86–0180.

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Oct. 27, 1986.

Irving S. Zeitlin, Memphis, Tenn., for debtor.

Roger A. Stone, Memphis, Tenn., for Fidelity Financial Services, Inc.

George W. Stevenson, Memphis, Tenn., Trustee.

## MEMORANDUM AND ORDER

DAVID S. KENNEDY, Bankruptcy Judge.

The instant "Complaint To Avoid Preference And For Other Relief" was filed by the plaintiff, Bruce Audwin Quinn ("Debtor") on August 11, 1986 against the defendant, Fidelity Financial Services, Inc. ("Fidelity") pursuant to 11 U.S.C. § 522(h) seeking to avoid a certain pre-bankruptcy foreclosure sale of the Debtor's home as a preferential transfer under 11 U.S.C. § 547(b) and a fraudulent conveyance under 11 U.S.C. § 548. Debtor also requested, inter alia, that a temporary restraining order issue enjoining Fidelity, the successful bidder at the foreclosure sale, from selling the property.[1]

Fidelity's answer denies the relevant allegations of the complaint and asserts as an affirmative defense that the court lacks jurisdiction to grant the relief requested by the Debtor. Prior to the filing of the complaint herein, Fidelity filed a "Motion To Lift Stay" in order to remove the Debtor from the premises. The hearing on the complaint was advanced to September 2, 1986, at which time hearings on the complaint and motion were essentially consolidated. At the close of the proof, the hearings were adjourned for two weeks by consent to allow the Debtor additional time to obtain new financing. Debtor was unsuccessful in his continued refinancing efforts. The parties have now presented post-trial briefs and waived oral arguments.

These proceedings are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F), (G) and (A).[2] Testimony at the trial was elicit-

---

1. Fidelity has consented to a status quo pending judicial determinations regarding the instant proceedings.

2. See also In re Production Steel, Inc., 48 B.R. 841 (D.C.M.D.Tenn.1985); In re Associated Gro-

cers of Nebraska Co-op, Inc., 62 B.R. 439 (D.C.D. Neb.1986); and Harvard Journal on Legislation, Vol. 23, No. 2, at p. 365.

ed from Roger A. Stone, Esq., the indenture trustee who conducted the pre-bankruptcy foreclosure sale, the Debtor and Mr. Clarence Benjamin of Fidelity. Based on the foregoing and the entire case record as a whole, the court makes the following findings of fact and conclusions of law in accordance with Bankr.Rule 7052.

## FACTS

Debtor's petition for relief under Chapter 13 of the Bankruptcy Code was filed on July 31, 1986. Debtor is employed by the W.R. Grace Co. as a printer. His foreclosed home is located at 2264 Darby, Memphis, Tennessee. On January 28, 1985, the Debtor and his non-filing wife executed a second trust deed on their home to secure payment of a promissory note in favor of Fidelity. The first deed of trust is held by Lumbermen's Investment Corp. Debtor obtained a home improvement loan from Fidelity to finance the addition of siding to his house. Debtor testified that he felt the siding had increased the value of his house, which was appraised by Fidelity at the time of the loan at $28,500.00.

Debtor's Chapter 13 statement reveals that his monthly installment note payment to Fidelity is $154.00 while the first mortgage note is $175.00 per month. Debtor admits that economic defaults exist regarding Fidelity. Debtor's net monthly income is $962.00 and his estimated expenses are $924.00 monthly. Debtor testified that at the time he incurred the debt to Fidelity he was able to afford the added expense; however, an expected raise from his employer was not forthcoming due to a wage freeze which he is still under.

Roger A. Stone, Esq., testified solely as the indenture trustee under the deed of trust. Mr. Stone testified that he conducted a foreclosure sale subject to the first mortgage at noon on July 18, 1986, at the southwest corner of the Shelby County, Tennessee Courthouse. The highest and only bid was from Fidelity for $5,500.00, an amount which is approximately $400.00 less than the pay-off balance. The sale was conducted under the normal procedure in Shelby County by reading aloud the notice and taking bids. Another foreclosure sale was held contemporaneously with the Fidelity sale and had apparently drawn considerable interest. It was conceded that the foreclosure sale on the Debtor's house was conducted without flags, banners, loud speakers, etc. On July 22, 1986, an indenture trustee's deed was executed by Fidelity and duly registered in the Register's Office on July 23, 1986.

Debtor's testimony also alluded to the fact that he had "worked with" Mr. Clarence Benjamin of Fidelity up to and including the day of the foreclosure sale. Although the Debtor asserted that he did not know the foreclosure sale actually took place, he admitted that no one had promised to stop or delay the sale. Debtor was attempting to obtain alternative financing from Freedlanders, which was declined on the morning of July 18, 1986. He then telephoned Mr. Benjamin to inform him of the events and was told by Mr. Benjamin that nothing more could be done. Debtor also testified that he paid the sum of $986.00 to Lumbermen's in June just prior to the foreclosure. Mr. Clarence Benjamin's testimony was essentially in accord with the Debtor's. He had several contacts with the Debtor who informed him of his efforts to obtain financing to pay Fidelity. Mr. Benjamin asserted that he never promised to delay or stop the foreclosure sale, but did try to work with the Debtor and did agree to give him time to re-purchase the home after the foreclosure sale, assuming that Fidelity was the successful bidder. Mr. Benjamin further testified that the last payment received from the Debtor was on April 30, 1986, which was credited to the March, 1986 payment.

To summarize, the relevant dates are as follows:

July 18, 1986—foreclosure sale held

July 22, 1986—indenture trustee's deed executed by Fidelity

July 23, 1986—indenture trustee's deed registered

July 31, 1986—Chapter 13 case filed

## LAW

The parties have submitted post-trial briefs which raise several issues. The court notes both parties' reliance on *In re Glenn*, 760 F.2d 1428 (6th Cir.1985). In *Glenn* the Sixth Circuit was presented with consolidated appeals raising similar questions regarding the point in the foreclosure process at which a Chapter 13 debtor loses the right to cure an economic default arising out of a mortgage on a debtor's principal place of residence pursuant to 11 U.S.C. § 1322(b). The Court reached an admittedly pragmatic result after tracking the various schools of thought, and stated that:

"The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises." *Id.* at 1435.

According to the Sixth Circuit, once the property is sold at a foreclosure sale, the right to cure a default and reinstate the terms of the mortgage cease. Especially pertinent to the instant proceeding, is the fourth reason cited by the Sixth Circuit in choosing the sale date as the cut-off date:

"The foreclosure sale normally comes only after considerable notice giving the debtor opportunity to take action by seeking alternative financing or by negotiating to cure the default or by taking advantage of the benefits of Chapter 13." *Id.* at 1435–36.

Debtor herein testified that he sought alternative financing up to the date of foreclosure sale. Debtor testified that he did not avail himself of the benefits of Chapter 13 prior to the foreclosure sale although it was known to him to be an option. In short, the instant proceeding falls squarely within the parameters of *Glenn*. Debtor has also cited *Glenn* at p. 1440 for the proposition that under exceptional circumstances the bankruptcy court's discretionary equitable powers pursuant to 11 U.S.C. § 105(a) permit the curing and reinstatement of the terms and conditions of the mortgage even after the foreclosure sale. Debtor's reliance is misplaced. The Sixth Circuit's decision regarding the § 105(a) equitable powers was in the context of tolling statutory redemption periods. The Court went on to conclude that:

"11 U.S.C. § 105(a) does not empower the courts to issue separate orders tolling statutory redemption period absent exceptional circumstances such as fraud, mistake, accident, or erroneous conduct." *Id.* at 1442.

The tolling of any statutory redemption period is not at issue in the instant proceeding.

■ Next, the court turns to the Debtor's allegation that the foreclosure sale should be set aside because less than reasonable equivalent value was obtained at the foreclosure, thus constituting a fraudulent conveyance pursuant to § 548(a)(2)(A) of the Bankruptcy Code. § 548 of the Code provides in relevant part as follows:

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*     \*     \*     \*     \*     \*

"(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

"(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

"(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

"(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."

Generally, § 548 of the Bankruptcy Code allows a bankruptcy trustee to avoid transfers, either voluntary or involuntary, of the debtor's interest in property made for less than reasonably equivalent value while the debtor is insolvent or is rendered insolvent by the transfer. This section also requires

the transfer to have occurred within one year of the filing of bankruptcy to be subject to avoidance. Since the Debtor alleges the foreclosure sale of his house was for less than reasonably equivalent value the initial inquiry must start there. In *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1139 (6th Cir.1985), the Sixth Circuit stated "the better view is that reasonable equivalence for the purposes of a foreclosure sale under § 548(a)(2)(A) should be consonant with the state law of fraudulent conveyances". The Sixth Circuit also noted that the:

> "well-nigh universal 'rule' that mere inadequacy of price alone does not justify setting aside an execution sale and that generally there must be in addition proof of some element of fraud, unfairness, or oppression accounting for this inadequacy in price." *Id.* at 1139.

The leading authority in Tennessee on the adequacy of foreclosure sale price, *Holt v. Citizens Central Bank*, 688 S.W.2d 414 (Tenn.1984), reh. den. 1985, appears to be in accord with the well-nigh universal rule. The Supreme Court of Tennessee adopted the following rule:

> "If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee that caused or contributed to an inadequate price, for a court of equity to set aside the sale." (citation omitted.) *Id.* at 416.

The court notes that the foreclosure sale in the instant proceeding was conducted by Mr. Stone subject to the first mortgage on the property. The sale price was approximately $400.00 less than Fidelity's pay-off balance. The only irregularity, misconduct, fraud or unfairness alleged is that the sale was conducted without any flags, signs, banners, loud speakers and was held simultaneous with another sale. The court finds no requirement that a foreclosure sale be conducted by using flags, signs, banners or loud speakers. The court also finds that the sale was otherwise legally held, conducted and consummated by Fidelity and the indenture trustee as required

by Tennessee law, although the sale price may have been inadequate. Moreover, the court will not infer that bidders from the other foreclosure sale would have bid at the foreclosure sale of the Debtor's property had the sale been delayed. There is nothing to indicate that bidders at a sale of commercial property would have any interest whatsoever in residential property and this court will not speculate on such. Thus, Debtor's assertion that the foreclosure sale was a voidable fraudulent conveyance must fail by virtue of *In re Winshall Settlor's Trust*, supra, and *Holt v. Citizens Central Bank*, supra.

■ Finally, the court must turn to the Debtor's assertion that the foreclosure sale which was held approximately 13 days prior to the filing of the Chapter 13 petition constitutes an otherwise avoidable preference under 11 U.S.C. § 547(b). Generally, a bankruptcy trustee may avoid a transaction if a transfer was made of an interest of the debtor in property; to or for the benefit of a creditor; for or on account of an antecedent debt; made while the debtor was insolvent; made within 90 days immediately preceding the commencement of bankruptcy; and which enables the creditor to realize more than he would have realized in a Chapter 7 liquidation. 11 U.S.C. § 547(b). The bankruptcy trustee has the burden of proof on each and every element of proving the avoidability of a transfer; and if the proof lacks on any one element, the transfer may not be avoided. 11 U.S.C. § 547(g); *In re Murray*, 27 B.R. 445, 447 (Bankr.M.D.Tenn.1983); *Steel Structures, Inc. v. Star Manufacturing Co.*, 466 F.2d 207, 216 (6th Cir.1972).

Although a presumption of insolvency 90 days preceding the bankruptcy case exists, the burden of pursuasion remains on the party in whose favor the presumption exists. 11 U.S.C. § 547(f); Rule 301 of the Federal Rules of Evidence. In the instant proceeding the Debtor is solvent notwithstanding the foreclosure sale. Reference to the Debtor's Chapter 13 statement reveals that he is still solvent. Debtor's Chapter 13 statement reveals three secured

debts: (1) Lumbermen's Investment Corp., the holder of the first mortgage on his foreclosed home; (2) Fidelity, the holder of the second mortgage on his foreclosed home; and (3) Bolin Auto Sales, the holder of a lien on his 1978 Ford Thunderbird automobile. Debtor listed no priority or unsecured debts.

Further examination of the Chapter 13 statement reveals that the Debtor asserts a present market value of $2,800.00 regarding the 1978 Ford Thunderbird which is subject to a lien in the amount of $1,500.00; and the Debtor has claimed the $1,300.00 equity as an exemption in his Schedule B–4. Debtor has also claimed exemptions of $10,000.00 in household goods, furniture and appliances and $300.00 in other personal effects.

In relevant part, 11 U.S.C. § 101(29) defines "insolvent" as follows:

"(29) 'insolvent' means—

"(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—

"(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

"(ii) property that may be exempted from property of the estate under section 522 of this title; and"

As noted, the proof demonstrates that prior to the foreclosure sale the Debtor was solvent. Debtor estimated the balance of the first mortgage debt to be $12,000.00; and the net balance of Fidelity's claim was approximately $5,900.00. Bolin Auto Sales is listed as the holder of a secured claim in the amount of $1,500.00 resulting in a total secured claims of approximately $19,400.00. Fidelity's own appraisal valued the house at $28,500.00 prior to the siding being added. Debtor testified that the siding work had increased the value of his home, which he insures for $32,000.00. Debtor's equity interest in his house, therefore, would range from approximately $10,000.00 to $14,000.00. Tennessee has opted out of the federal scheme of exemptions.

11 U.S.C. § 522; TENN.CODE ANN. § 26-2-112. TENN.CODE ANN. § 26-2-301 provides, inter alia, a homestead exemption for the Debtor up to an aggregate amount of $5,000.00. It is readily apparent that prior to the foreclosure the sum of the Debtor's debts is far less than the value of the Debtor's properties exclusive of his exempt properties.

Moreover, the record clearly demonstrates, as noted, that the foreclosure sale did not render the Debtor insolvent. The foreclosure sale left the Debtor with one secured debt owed to Bolin Auto Sales and a possible $400.00 unsecured, deficiency balance owed to Fidelity, for a total of $1,900.00. Debtor has attempted to claim as exempt a total of $11,600.00 in remaining personalty pursuant to TENN.CODE ANN. § 26-2-101, et seq. TENN.CODE ANN. § 26-2-102 only permits an exemption up to $4,000.00; however, the court is mindful that this is a Chapter 13 case. See also TENN.CODE ANN. § 26-2-103 for additional items of personalty which are absolutely exempt. Under a totality of the facts and circumstances, the value of the Debtor's properties exceeds his exemptions by approximately $7,000.00. In turn, his property, exclusive of property subject to exemption, valued according to the Debtor's estimation, far exceeds his debts. Debtor, therefore, is solvent.

Because the "transfer" as contemplated in 11 U.S.C. § 547(b) was not made while the debtor was insolvent the Debtor cannot meet the required burden of proof and thusly the transfer cannot be avoided. Failure to prove one or more of the essential elements in 11 U.S.C. § 547(b) is fatal to the trustee's (or debtor's) complaint.

IT IS, THEREFORE, ORDERED THAT:

1. The Debtor's "Complaint To Avoid Preference And For Other Relief" is denied; and

2. Fidelity's motion to lift the § 362(a) automatic stay is hereby granted. 11 U.S.C. § 362(d)(1).