**In re Maxwell George HORKINS, Jr., and Jo Ann N. Horkins, Debtors.**

**Bankruptcy No. 390–08877.**

United States Bankruptcy Court,
M.D. Tennessee.

Sept. 24, 1992.
Memorandum Denying Motion to
Amend, March 29, 1993.

Robert G. Jones, Boult, Cummings, Conners & Berry, Nashville, TN, for WETI.

C. Bennett Harrison, Jr., Cornelius & Collins, Nashville, TN, for Horkins.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

The contested matter before the court arises from the motion of West End Terrace, Inc. (WETI) for summary judgment on the debtor in possession's objection to WETI's claim. The issues raised include the applicability of the doctrine of res judicata, alleged irregularities in foreclosure sales, and violation of the automatic stay. As discussed below, the court grants WETI's motion for summary judgment in its entirety, thereby overruling the debtor in possession's objection, and finds that the debtor in possession is not entitled to a remedy even if WETI technically violated the automatic stay.

The following constitute findings of fact and conclusions of law. Bankr.R. 7052.

### II. FINDINGS OF FACT

According to the pretrial statement, the parties have stipulated to certain facts and exhibits. Those exhibits include opinions and judgments from the Chancery Court of Davidson County and the Tennessee Court of Appeals. Pretrial Statement on Debtors-in-Possession's Objection to Claim of West End Terrace, Inc. (Dec. 16, 1991) at 8 [hereinafter Pretrial Statement].

WETI sold condominium units at a complex in Nashville to the plaintiffs, including the debtors. Memorandum, *Humphries v. West End Terrace, Inc.*, Case No. 89–492–III, Chancery Court of Davidson County (July 18, 1989) at 1 [hereinafter Dismissal Memorandum]. The plaintiffs sued WETI and others on the theory that the defendants failed to disclose prior liens and mortgages encumbering the property, which allegedly adversely affected the marketability of their titles and the value of the property. The plaintiffs sought rescission and damages. *Id.*

On July 18, 1989, the Chancery Court granted WETI's motion to dismiss because the statute of limitations had run on the claims for misrepresentation and conspiracy. Order, *Humphries v. West End Terrace, Inc.*, Case No. 89–492–III, Chancery Court of Davidson County (Aug. 8, 1989) at 2 [hereinafter Dismissal Order]; Dismissal Memorandum at 6–7. The Chancery Court distinguished between fraudulent inducement to buy the units, which formed the basis of the plaintiffs' action, and fraudulent concealment of the cause of action, which could toll the statute of limitations. The court found that "the plaintiffs cannot prove an active, fraudulent concealment of a cause of action." Dismissal Memorandum at 6. The Chancery Court denied WETI's motion to dismiss the plaintiffs' claims based on the Tennessee Consumer Protection Act, Tenn.Code Ann. §§ 47–18–101 to 47–18–1604 (1991) [hereinafter TCPA], and breach of contract. *Id.* at 10.

Later, the Chancery Court granted WETI's motion for summary judgment both on the plaintiffs' TCPA and contract claims. Memorandum, *Humphries v. West End Terrace, Inc.*, Case No. 89–492–III, Chancery Court of Davidson County (April 12, 1989) at 5 [hereinafter Summary Judgment Memorandum]. The Chancery Court noted that when the plaintiffs purchased the condominiums, they may have assumed certain risks affecting the marketability of the condominiums including "oversupply, availability of financing, or the location and physical condition of the condominium development itself." *Id.* at 4. The Chancery Court directly addressed the issue of the plaintiffs' professional appraisers and found that they did not create a genuine issue of material fact on the issue of marketability of title. Concluding on the plaintiffs' claims, the Chancery Court stated, "there is no competent proof before the Court that the units are legally unmarketable or that the plaintiffs suffered any compensable damages as a result of liens incurred by the defendants." *Id.* at 5.

In same opinion, the Chancery Court then granted summary judgment to WETI: "The defendants ask that acceleration provisions be enforced against those plaintiffs [including the debtors] who have stopped making their mortgage payments.... The plaintiffs were never relieved from their obligations under their notes and remain

bound by their agreement. It is now the defendants' rights to demand payment in full." *Id.* at 5.

The court entered an order awarding damages to WETI from the debtors of $518,692.34. Order, *Humphries v. West End Terrace, Inc.,* Case No. 89–492–III Chancery Court of Davidson County (October 16, 1990) at 2 [hereinafter Judgment Order]. This order also notes that the "monetary judgments, as well as the Court's prior judgments dismissing the remaining claims of the Plaintiffs against WETI ... are expressly made final and appealable in all respects...." *Id.* at 4.

On October 12, 1990, the debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 15, 1990, WETI filed a proof of claim for $518,692.34. Pretrial Statement at 8. This claim was secured by units in the West End Terrace complex. After obtaining relief from the automatic stay, WETI purchased the condominium units at its own foreclosure sale on August 23, 1991. *Id.* WETI then filed an amended proof of claim for an unsecured claim in the amount of $384,556.79. *Id.* On September 13, 1991, the debtors objected to WETI's unsecured claim. Objection to the Claim of West End Terrace, Inc. (Sept. 13, 1991) [hereinafter Objection to Claim]. On September 19, 1991, this court confirmed the debtors' Chapter 11 plan, which provided for 100% payment of the allowed unsecured claims. Pretrial Statement at 8.

On October 5, 1991, all plaintiffs in the Chancery Court case appealed the judgment to the Tennessee Court of Appeals. The parties have stipulated that WETI never obtained an order for relief from the stay to defend against the appeal. Pretrial Statement at 9. The Tennessee Court of Appeals affirmed the partial dismissal for failure to state a claim, the summary judgment on the debtors' claim, and the award of damages on WETI's counterclaim. *Humphries v. West End Terrace, Inc.,* App. No. 01–A–01–9102–CH–00047 (Nov. 22, 1991) (Exhibit B to Pretrial Statement) at 4–5, 1991 WL 244468.

## III. CONCLUSIONS OF LAW

WETI has moved for summary judgment arguing that the theories supporting the debtor in possession's objection to WETI's unsecured claim are barred by the doctrine of res judicata because the claims have already been litigated in, and rejected by, a state court.

### A. SUMMARY JUDGMENT

Bankruptcy Rule 7056 applies in this contested matter. *See* Bankr.R. 3007 advisory committee's note (1983); Bankr.R. 9014. Bankruptcy Rule 7056 incorporates Federal Rule of Civil Procedure 56, which states in part:

(c).... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....*

....

(e).... When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but* the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.*

Fed.R.Civ.P. 56(c), (e) (West 1991) (emphasis added). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In this case, WETI has the burden of production to show that it is entitled to summary judgment either by "affirmative evidence negating an essential element of the [debtor in possession's] claim or ... by demonstrating that the [debtor in possession's] evidence itself is insufficient to establish an essential element of its claim." 10A Fed. Practice & Procedure § 2727, at

31 (Charles A. Wright, et al. eds., 2d ed.) (Supp.1992) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If WETI satisfies this burden, then the debtor in possession must "call evidence to the attention of the court to dispute that contention." *Id.*

## B. RES JUDICATA

WETI's main basis for summary judgment is that the doctrine of res judicata bars the debtor in possession from litigating the same claim the debtors pursued, and lost, in Chancery Court. Bankruptcy courts, in determining the allowance and objections to claims, apply federal law, *Heiser v. Woodruff*, 327 U.S. 726, 732, 66 S.Ct. 853, 855, 90 L.Ed. 970 (1946), but "[f]ederal courts must give a state court judgment the same preclusive effect as would a court of the state in which the judgment was handed down." *Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989); *see* 28 U.S.C. § 1738. Therefore, this court will look to the preclusive effect of the Chancery Court judgment under Tennessee law.

The Tennessee Supreme Court has stated:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit.

*Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn.1987); *see American Nat'l Bank and Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn.1979). "In order for *res judicata* to apply, however, the prior judgment must conclude the rights of the parties on the merits." *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn.1989).

■ This court, then, must determine whether the judgment in the Chancery Court was on the merits; whether the objection to the claim must raises issues that were or could have been litigated in the Chancery Court action; and whether the debtor in possession is bound as a privy of the prepetition debtors.

A judgment on the merits includes both dismissal and summary judgment. As for dismissal:

> Unless the court in its order otherwise specifies, a dismissal under this subdivision and any dismissal provided for in this Rule 41, *other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party*, operates as an adjudication on the merits.

Tenn.R.Civ.P. 41.02(3) (West 1991) (emphasis added). The dismissal based on a lapsed statute of limitations does not fall within one of the three stated exceptions in this rule and, therefore, was an adjudication on the merits. Likewise, a "motion for summary judgment goes to the merits of the litigation." *Fowler v. The Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978); *see Ferguson v. Tomerlin*, 656 S.W.2d 378, 382 (Tenn.Ct.App.1983).

Next, this court must determine which causes of action were or could have been litigated by the debtors in the state court. The debtor in possession does not clearly describe its theories, but they appear to be based on WETI's alleged fraud in the sale of the condominiums to the debtors and on fraud in the foreclosure sales. This court finds that the theory concerning fraud in the original transaction was decided by the Chancery Court. The court also finds that the debtors could not have litigated the foreclosure issue in Chancery Court because the foreclosures had not occurred. Therefore, the issue of fraud in the foreclosure is not barred by res judicata and will be discussed below.

Res judicata also requires privity between the debtors and the debtor in possession. Privity is a question of fact. *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir.1981).

> [Privity] simply represents a conclusion that a person is so closely connected to a party that with respect to the issues in litigation the person's interests are essentially the same as those litigated interests of the party. A finding of privity, then, reflects a belief that the relationship between the party and the non-

party is so close that the judgment may fairly bind the non-party. *United States v. Truckee–Carson Irrigation Dist.*, 649 F.2d 1286, 1303 (9th Cir. 1981) (citation omitted).

The general rule is that a trustee or debtor in possession is in privity with the prepetition debtor and is bound by prepetition judgments against the debtor. *Teltronics Services, Inc. v. L.M. Ericsson Telecommunications, Inc.*, 642 F.2d 31, 37 (2d Cir.1981); 1B Moore's Federal Practice, ¶ 0.419[3.–1] at 629 (2d ed. 1992) [hereinafter Moore's]. This general rule is not absolute because the debtor in possession represents not only the debtors' estate, but also the creditors. Furthermore, this general rule is subject to certain policy considerations. 1B Moore's ¶ 0.419[3.–6] at 661–63.

One policy consideration is whether the prior litigation was pursued vigorously by the debtors. Because the debtors initiated both the Chancery Court suit and the appeal, it appears that they vigorously litigated the Chancery Court suit. The debtor in possession has done nothing to change this perception.

Another policy consideration is whether there was fraud in the procurement of the prior judgment. Again, the debtor in possession has presented no indication that WETI obtained the Chancery Court judgment by fraudulent means. Therefore, this court finds that the prepetition debtors and the debtor in possession have interests so similar that the prior judgment binds the debtor in possession.

The debtor in possession also argues that res judicata should not apply because the judgment in Chancery Court was not "final." Res judicata may require a final judgment, *see Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), but the debtor in possession's argument that the Chancery Court judgment was not final is spurious. In Tennessee, a judgment is final "when it decides and disposes of the *whole* merits of the case leaving nothing for the further judgment of the court." *Saunders v. Metro. Gov't of Nashville & Davidson County*, 214 Tenn. 703, 709, 383 S.W.2d 28, 31

(1964) (emphasis original), *quoted in C.O. Christian & Sons Co., Inc. v. Nashville P.S. Hotel, Ltd.*, 765 S.W.2d 754, 756 (Tenn. Ct.App.1988). Despite the numerous parties in the Chancery Court action, the Chancery Court disposed of the matter entirely through the Summary Judgment Memorandum and expressly made its judgment final through the Judgment Order. *See Teachers Ins. & Annuity Assoc. of America v. Butler*, 803 F.2d 61, 66 (2d Cir.1986) (Court applied res judicata to judgment that was not final for appeal purposes, but was final for practical purposes.) The assertion of jurisdiction by the Tennessee Court of Appeals also indicates that the Chancery Court order was final. This court finds that the judgment in the Chancery Court was final for the purposes of res judicata.

Therefore, this court finds that the debtor in possession is barred by the doctrine of res judicata from objecting to WETI's claim on the basis of fraud in the original sales transaction. *See Heiser*, 327 U.S. at 733, 66 S.Ct. at 856 ("[W]e are aware of no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata....").

## C. FORECLOSURE

It is true that the debtors could not have litigated in state court the cause of action based on fraud in the foreclosure sales. The issue here is whether a debtor in possession can prevail against a motion for summary judgment on the theory that irregularities in the foreclosure sale are sufficient to disallow the deficiency claim of the creditor. The debtor in possession did not raise irregularities in the foreclosure sale in their initial objection to the claim, *see* Objection to Claim, but in the Pretrial Statement, the debtors alleged that

the foreclosure proceedings were not conducted in good faith for no reasonably prudent person would ever purchase one of the condominium units for a price anywhere close to that paid by the debtors-in-possession given the inability of WETI to deliver clear title.

Pretrial Statement at 2. Although the debtors' allegation is suspiciously close to

its allegations of fraud in the original transaction, this court will assume that the debtors have presented a separate theory. Nevertheless, this theory is ripe for summary judgment.

■ Summary judgment in this case turns on the allocation of the burden of proof.

Section 502(a) of the Bankruptcy Code, read in conjunction with Bankruptcy Rule [ ] 3001(f), establishes that a properly executed and timely filed proof of claim constitutes prima facie evidence of the validity thereof. If the trustee [or debtor in possession] objects to the claim, he must produce evidence of probative force equal to that of the allegation of the creditor's proof of claim to rebut the presumption in favor of the creditor.

*In the Matter of Unimet Corp.*, 74 B.R. 156, 165 (Bankr.N.D.Ohio 1987). *See also In re Wells*, 51 B.R. 563, 566 (D.Colo.1985). Summary judgment will be appropriate if the debtor in possession has failed to produce proof sufficient to rebut the validity of WETI's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

■ WETI's motion for summary judgment stated, "Debtors have not alleged any basis to set aside the foreclosure sale or object to the deficiency claim." Motion for Summary Judgment (Jan. 15, 1992) at 4. In its response, the debtor in possession stated:

As to whether the debtors can sustain their objection on the basis of irregularities and inequities surrounding the subsequent foreclosure sales is left for another day following adequate discovery. Suffice it to say that the significant deficiency WETI asserts due to woefully inadequate prices received at the foreclosure sales give[s] rise to the suggestion of inequities demanding further inquiry.

Debtors–in–Possession's Opposition to Motion for Summary Judgment (Jan. 31, 1992) at 3.

This statement by the debtor in possession raises two issues. First, is inadequacy of price alone sufficient for this court to set aside the foreclosure sale? In Tennessee, the answer is clearly in the negative.

If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the [deed of trust] trustee or the mortgagee *that caused or contributed to an inadequate price*, for a court of equity to set aside the sale.

*Holt v. Citizens Central Bank*, 688 S.W.2d 414, 416 (Tenn.1984). The debtor in possession has made some allegations that WETI committed fraud contributing to the inadequate price, but the Chancery Court, in a decision that binds this court, found these same allegations to be without merit.

The second issue raised by the debtor in possession is whether that the proof of irregularities can wait for further discovery. Summary judgment should be granted after reasonable opportunity for discovery, but WETI's motion for summary judgment clearly put the debtor in possession on notice that it should come forward with its evidence. *See Celotex*, 477 U.S. at 324–26, 106 S.Ct. at 2553–54. Not only has the debtor in possession failed to present facts to rebut a summary judgment, it has presented no affidavits and has stated no reasons why this court should permit further discovery. *See* Fed.R.Civ.P. 56(f).

Because the debtor in possession's objection to WETI's claim is factually unsupported and should be disposed consistent with the purpose of Rule 56, *see Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, this court will grant WETI's motion for summary judgment on the issue of irregularities in the foreclosure sales.

## D. EQUITY POWER TO "LOOK BEHIND" CHANCERY COURT JUDGMENT

■ The debtors have cited several cases for the proposition that this court should

look behind the Chancery Court judgment to find fraud on the part of WETI. *See* Debtor–in–Possession's Opposition to Motion for Summary Judgment (Jan. 31, 1992) at 5–7 (citing *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Vanston Bondholders Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re A.H. Robins Co., Inc.,* 89 B.R. 555 (E.D.Va. 1988)). The court has reviewed these cases and finds that they do not require this court to set aside the Chancery Court judgment when the debtors have failed to present any other proof or theory that would have changed the outcome in Chancery Court.

This court agrees that it has broad equitable powers. Competing with this court's use of its equitable powers, however, are policies of finality of judgments and respect for state court judgments. These latter concerns outweigh any equitable considerations the debtors have presented to this court.

### E. VIOLATION OF THE AUTOMATIC STAY

Finally, the debtor in possession contends that the pursuit of the postpetition appeal violated the automatic stay. The Code provides:

> [A] petition filed under ... this title ... operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362(a) (Clark Boardman Callaghan 1991). The debtors argue that WETI's response to the appeal without relief from this court violated the automatic stay.

The appeal was a commencement or continuation of a judicial action or proceeding that was commenced before the commencement of the case under Title 11. Therefore, all the criteria for a violation of the stay under § 362(a)(1) are met except whether the appeal was an action "against the debtor." In deciding whether an action is "against the debtor," the initial status of the defendant is determinative. *Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62 (6th Cir.1983). The seminal case on this issue stated:

> [S]ection 362 should be read to stay all proceedings that were *originally brought* against the debtor, regardless of whether the debtor was appellant or appellee. Thus, whether the case is subject to the automatic stay must be determined at its inception.

*Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3d Cir.1982) (emphasis original). Another Third Circuit case indicates that actions such as counterclaims should be considered separately from the original complaint for the purposes of the automatic stay. *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1204–05 (3d Cir.1991).

Because the debtors appealed the judgment on the counterclaim as well as the judgment on their claim, the appeal could be, at least partially, "against the debtors." Even assuming WETI's response to the debtor in possession's appeal was a technical violation of the stay, the court finds that the debtor in possession cannot maintain, in good conscience, the position that the appeal should be rendered void. Perhaps WETI should have obtained relief from the stay to respond to the appeal, but the debtor in possession is estopped from claiming entitlement to any remedy for that violation when its privy initiated the appeal.

### IV. CONCLUSION

Based on the foregoing, the court will enter an order granting WETI's motion for summary judgment and overruling the debtor in possession's objection to WETI's claim.

MEMORANDUM DENYING MOTION TO ALTER OR AMEND PRIOR ORDER GRANTING SUMMARY JUDGMENT

## I. INTRODUCTION

The debtors have moved to alter or amend this court's order granting the motion for summary judgment of West End Terrace, Inc. (WETI). *See* Order (Sept. 25, 1992). In their motion to alter or amend, the debtors ask for time to complete discovery on the issue of fraud in the foreclosure sale.

After considering the statements of counsel, the documents filed by the parties, and the entire record, this court finds that the debtors' motion should be denied.

The following constitute findings of fact and conclusions of law. *See* Bankr.R. 7052.

## II. FACTS

WETI sold condominium units to the debtors. The transaction was financed by notes and mortgages in favor of WETI. The debtors then sued WETI in the Chancery Court of Davidson County for rescission and damages. The Chancery Court denied the debtors' claims and granted WETI's claim for the unpaid balance on the notes. *See* Memorandum at 1–4 (Sept. 25, 1992) [hereinafter September 25 Memorandum].

After the debtors filed bankruptcy, WETI obtained relief from the automatic stay and foreclosed on the property. WETI then filed a substantial unsecured claim for the deficiency from the foreclosure. The debtors objected to that claim, but the court granted WETI's summary judgment motion in full. Although the main focus of the summary judgment was the debtors' claim concerning fraud in the original sale transaction, *id.* at 4–11, the court did rule on the fraud in the foreclosure issue, *id.* at 11–14.

The debtors did not mention the fraud in the foreclosure issue in their initial objection to WETI's claim, but first raised the issue in the pretrial statement. In this document, the debtors alleged that WETI committed fraud when it sold the debtors'

condominiums "with a significant cloud upon their title." Pretrial Statement on Debtors–in–Possession's Objection to Claim of West End Terrace, Inc. at 2 (Dec. 16, 1991) [hereinafter Pretrial Statement]. This clouded title, according to the debtors, then caused a low foreclosure sale price

> for no reasonably prudent person would ever purchase one of the condominium units for a price anywhere close to that paid by the debtors-in-possession given the inability of WETI to deliver clear title.

*Id.*

After a pretrial conference, a pretrial order set a deadline for WETI's motion for summary judgment and set a hearing for that motion. Order (January 2, 1992) [hereinafter Pretrial Order]. Both the Pretrial Order and the entire record were silent as to any restrictions on discovery.

WETI moved for summary judgment on several grounds. On the foreclosure sale issue, WETI argued that the debtors had only alleged inadequate price as the basis for WETI's fraud. Motion for Summary Judgment at 4 (Jan. 15, 1992); Memorandum of Law at 10–12 (Jan. 15, 1992).

In response, the debtors stated:

> As to whether the debtors can sustain their objection on the basis of irregularities and inequities surrounding the subsequent foreclosure sales is left for another day following adequate discovery. Suffice it to say that the significant deficiency WETI asserts due to woefully inadequate prices received at the foreclosure sales give[s] rise to the suggestion of inequities demanding further inquiry.

Debtors–in–Possession's Opposition to Motion for Summary Judgment at 3 (January 31, 1992) (emphasis added) [hereinafter Debtors' Opposition]. The debtors filed no affidavits with their response to WETI's Motion for Summary Judgment.

In the September 25 Memorandum, the court granted summary judgment in favor of WETI on the fraud in the foreclosure issue. September 25 Memorandum at 14. The court found that allegations of inade-

quate price alone were insufficient to set aside a foreclosure sale and that the debtors had failed to present other evidence sufficient to create a genuine issue of material fact. *Id.* at 13–14. (citing *Holt v. Citizens Central Bank,* 688 S.W.2d 414, 416 (Tenn.1984)). The court also noted that the debtors were not entitled to further discovery because they had failed to satisfy the requirements of Rule 56(f) of the Federal Rules of Civil Procedure. September 25 Memorandum at 13–14.

The court never restricted discovery in this matter and rendered its opinion on summary judgment on September 25, 1992, over nine months after the pretrial conference.

After the court's decision, the debtors filed an affidavit, a motion to alter or amend, a memorandum in support of that motion, and an unverified supplemental motion.

In his affidavit, counsel for the debtors stated that the parties agreed at the pretrial conference to take no discovery "until WETI filed a motion for summary judgment...." Affidavit of C. Bennett Harrison, Jr. in Support of the Debtors' Motion to Alter or Amend Order at 2 (Oct. 5, 1992) [hereinafter Harrison Affidavit]. *See also* Memorandum of Law in Support of Debtor–in–Possessions' Motion ˙ to Alter or Amend at 4 (Oct. 5, 1992). The affidavit further stated that WETI filed its motion for summary judgment according to the Pretrial Order, and on February 4, 1992, the court heard oral argument and took the matter under advisement. Harrison Affidavit at 2. The affidavit notes that even absent a discovery agreement, the debtors had no time to conduct discovery before the hearing and, therefore, could not submit affidavits concerning the nature of the foreclosure proceeding. *Id.* at 3.

In their unverified supplemental motion, filed after oral argument on the motion to alter or amend, the debtors describe the basis for their allegation of fraud in the foreclosure. Debtors' Supplement to Their Motion to Alter or Amend Summary Judgment (December 7, 1992) [hereinafter Debtors' Supplement]. The debtors argue that the Notice of Foreclosure Sale, which stated that the property would be sold subject to prior liens, was inconsistent with a Subordination and Non–Disturbance Agreement signed by WETI (Subordination Agreement). *See* Exhibits A & B to Debtors' Supplement. Also attached to the Debtors' Supplement are copies of "Successor Trustee's Deeds," which indicate that WETI purchased the property subject to the prior liens and encumbrances. Exhibit C to Debtors' Supplement.

## III. DISCUSSION

In their motion, the debtors argue that they are entitled to further discovery on the foreclosure issue, that the court misread *Holt,* and that the court should use its equity power to look behind the Chancery Court judgment.

### A. Preliminary Issues

Two of these three issues can be resolved briefly. The court finds that there are no grounds to alter or amend its order concerning *Holt* and that it properly interpreted this case. *See* September 25 Memorandum at 13–14. *See also McDill Columbus Corp. v. The Lakes Corp.,* No. 03A01–9112–CV–00445, 1992 WL 115576, 1992 Tenn.App. Lexis 473 (Tenn.Ct.App. June 1, 1992) (*app. denied* October 26, 1992) ("A very low price alone cannot void a sale...."); *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1139 (6th Cir.1985) (noting the "well-nigh universal rule that mere inadequacy of price alone does not justify setting aside an execution sale...."); *In re Quinn,* 69 B.R. 776, 779 (Bankr.W.D.Tenn. 1986) (citing both *In re Winshall Settlor's Trust* and *Holt* ).

Similarly, the court remains unwilling to use its equitable powers to "look behind" the valid and binding Chancery Court judgments. *See* September 25 Memorandum at 14.

### B. Rule 56(f)

■ The third issue, whether the debtors are entitled to discovery on the fraud in the foreclosure issue, requires a more lengthy discussion. Rule 56(f) provides:

*Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated* present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f) (Clark Boardman Callaghan 1993) (emphasis added). The Advisory Committee Note to Bankruptcy Rule 3007 and Bankruptcy Rules 9014 and 7056 make Rule 56(f) applicable to this claim objection.

At the summary judgment stage, Rule 56(f) provided the mechanism for the debtors to obtain further discovery. *Emmons v. McLaughlin,* 874 F.2d 351, 356 (6th Cir. 1989). The debtors bore the burden, under Rule 56(f), to demonstrate why they "could not oppose the summary judgment motion by affidavit and how postponement of a ruling on the motion could enable [them] to rebut [WETI's] showing of the absence of a genuine issue of fact." *Id.* at 357; *see Klepper v. First American Bank,* 916 F.2d 337, 343 (6th Cir.1990). The debtors did not comply with the technical requirements of Rule 56(f) because they failed to present affidavits stating reasons for their inability to submit affidavits under Rule 56(e). *See Shavrnoch v. Clark Oil & Refining Corp.,* 726 F.2d 291, 294 (6th Cir.1984).

Although Rule 56(f) "should be applied with a spirit of liberality" when nonmoving parties have been diligent and have acted in good faith, 10A Charles W. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure,* § 2740, at 532–33 (1983), this spirit of liberality should not protect those who have not acted to protect their own rights. "The most obvious indication of lack of diligence is a failure on the part of the nonmovant to present affidavits under either subdivision (e) or (f)." *Id.* at 535. *See also Monks v. Marlinga,* 923 F.2d 423, 427 (6th Cir.1991) (Nelson, J., concurring) ("Absent compliance with Rule 56(f), this court, in my view has no alternative but to [affirm the district court's granting of summary judgment]."). As stated above, the debtors failed to submit affidavits under either Rule 56(e) or Rule 56(f) prior to the court's decision on summary judgment.

## C. Substantial Compliance with Rule 56(f)

The Sixth Circuit has held that discovery should be extended when the nonmovant has substantially complied with Rule 56(f) before the court's summary judgment ruling. *See Glen Eden Hospital, Inc. v. Blue Cross & Blue Shield, Inc.,* 740 F.2d 423, 427 (6th Cir.1984) ("The affidavit of counsel satisfied the requirement of Rule 56(f)."); *Yashon v. Gregory,* 737 F.2d 547, 549 (6th Cir.1984) ("The third motion was a conditional motion under Federal Rule of Civil Procedure 56(f) for a continuance pending discovery."); *Management Investors v. United Mine Workers of America,* 610 F.2d 384, 388 (6th Cir.1979) (Upon defendant's filing of a motion for summary judgment seven days before trial, plaintiff opposed the motion in a telegram delivered to the court two days later.).

On one occasion, the Sixth Circuit has reversed a summary judgment when the nonmovants failed to file affidavits under either Rules 56(e) or (f). *Vega v. First Federal Savings & Loan Assoc.,* 622 F.2d 918 (6th Cir.1980). The Vegas had filed interrogatories, and the defendant had objected to and had refused to answer the interrogatories. This dispute concerning interrogatories remained unresolved when the district court granted summary judgment. The Sixth Circuit stated, "Prior to deciding such a factual issue by means of summary judgment, the district court must provide both parties an opportunity to conduct some discovery." *Id.* at 926.

In a later case, the Sixth Circuit upheld summary judgment, despite the language in *Vega,* when the record disclosed no order limiting discovery and the appellant had not conducted discovery during the fifteen months that the motion for summary judgment was pending. *Bilderback v. City Nat'l Bank & Trust Co.,* 639 F.2d 331, 332–33 (6th Cir.1981). *See also United States v. Northernaire Plating Co.,* 685

F.Supp. 1410, 1414 (W.D.Mich.1988) (*Vega* was inapposite when no discovery disputes were pending and the defendants had not been "denied the opportunity to pursue relevant avenues of inquiry...." (quoting *Vega,* 622 F.2d at 926)), *aff'd sub nom. United States v. R.W. Meyer, Inc.,* 889 F.2d 1497 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990). *Compare Tarleton v. Meharry Medical College,* 717 F.2d 1523, 1533–35 (6th Cir.1983) (Summary judgment was inappropriate when plaintiff's affidavit suggested a genuine issue of material fact and the district court had not resolved plaintiff's motion to continue discovery.) *and Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 970–72 (6th Cir.1989) (Summary judgment was inappropriate when district court had restricted discovery on breach of contract issue then granted summary judgment *sua sponte* on that issue.) *with Chilingirian v. Boris,* 882 F.2d 200, 203 (6th Cir.1989) (Summary judgment was appropriate before discovery occurred when facts were undisputed, there was no evidence that discovery would have disclosed supporting facts, and appellant had initiated the summary judgment proceedings.) *and Qualicare–Walsh, Inc. v. Ward,* 947 F.2d 823, 827 (6th Cir.1991) (Summary judgment was appropriate when discovery had been conducted in prior state court case and was substantially complete in federal district court case.).

In determining whether the debtors have substantially complied with Rule 56(f), a First Circuit case is instructive.

An opponent of a summary judgment motion need not follow the exact letter of Rule 56(f) in order to obtain its benefits. Nevertheless, he departs from the plain language of the rule at his peril. When the departure occurs, the alternative proffer must simulate the rule in important ways.

*Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 988 (1st Cir.1988).

The *Paterson–Leitch* court set forth several factors for deciding whether an opponent to a motion for summary judgment had substantially complied with Rule 56(f). First, the opponent's request for further discovery should be written and timely made. Second, the opponent's statements, if not in the form of an affidavit, must be made in some authoritative manner. Third, the opponent's statements should set forth some basis for the belief that undiscovered material facts likely exist. Fourth, there must be a reasonable likelihood that information can be obtained within a reasonable extension of time and that those facts will create "an issue both genuine and material." *Id.* Finally, the debtors "must demonstrate good cause for failure to have conducted the discovery earlier." *Id.*

Although all submissions to the court were written and either an affidavit or subject to Rule 11, only those documents filed after the summary judgment hearing address the possible fruits of further discovery and the reason the debtors did not conduct discovery earlier.

Before the summary judgment hearing the debtors' only allegation concerning the foreclosure sale was inadequate foreclosure sale prices. The sale prices were known to the debtors and did not indicate, on their own, that additional undiscovered information existed. Similarly, these allegations did not indicate that further discovery would reveal information supporting an issue of material fact. The debtors did state that discovery was necessary, but not why they could not conduct discovery. Given these facts, the debtors' did not substantially comply with Rule 56(f) before the court entered its summary judgment order.

Documents filed after the court rendered its decision on the summary judgment motion were untimely. *See Paterson–Leitch,* 840 F.2d at 988 ("[I]t is difficult to envision that a request first made after the conclusion of oral argument [on summary judgment] could be considered as seasonal.").

Only the documents attached to the Debtors' Supplement have addressed the existence of undiscovered material information. These documents reveal that the Subordination Agreement, to which the debtors were not a party, and the foreclosure documents were facially inconsistent. The

debtors, however, have failed to suggest how this inconsistency would create an issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The debtors also have failed to show that a reasonable additional time would provide a realistic prospect of obtaining material facts.

As good cause for their failure to conduct discovery, the debtors submit that an agreement existed between the parties to forebear from discovery. *See* Harrison Affidavit at 2–3. The debtors, however, never disclosed the existence of this agreement to the court before summary judgment was rendered. In the absence of a bona fide discovery dispute at the time of the summary judgment, the debtors have not shown good cause for failure to conduct discovery in the substantial time between the filing of their objection to WETI's claim and the court's decision on the motion for summary judgment. *See Bilderback,* 639 F.2d at 332–33.

Based on analysis of these factors, the debtors have not met their burden of substantial compliance with Rule 56(f).

## IV. Conclusion

In conclusion, the court considers the following factors to be important in this case. The debtors first raised the fraud in the foreclosure issue, although not in their objection to WETI's claim. The debtors had notice that the foreclosure issue was subject to summary judgment because WETI included it in their motion and the debtors responded in their opposition. There was an opportunity for discovery because the court never restricted discovery and over nine months elapsed between the pretrial conference and the court's order on summary judgment. The debtors failed to disclose, prior to the summary judgment hearing, the existence of the alleged agreement to forebear from discovery. The debtors failed to file any affidavits before the summary judgment hearing.

The debtors failed to carry their burden of substantial compliance with Rule 56(f) either before or after the summary judgment hearing.

In the absence of either technical or substantive compliance with Rule 56(f) the court finds that the debtor's motion to alter or amend should be denied. An appropriate order will be entered.