QUALICARE–WALSH, INC., a Louisiana corporation; Harry P. Walsh; Christine Walsh, Plaintiffs–Appellants,

v.

James E. WARD; Aaron Ward; George Holder; Ward Drywall Company, Inc., a Tennessee corporation; James E. Ward & Associates, Inc., also a Tennessee corporation, Defendants–Appellees.

No. 90–6556.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 10, 1991.

Decided Oct. 25, 1991.

Winston S. Evans, Evans, Jones & Reynolds, Nashville, Tenn., for plaintiffs-appellants.

James Kirby, Nashville, Tenn., for defendants-appellees.

Aaron Ward, pro se., Corpus Christi.

George Holder, pro se., Nashville.

Before KEITH and MARTIN, Circuit Judges, and TAYLOR, District Judge.[*]

BOYCE F. MARTIN, Jr., Circuit Judge.

Following an alleged breach of a settlement agreement, Qualicare–Walsh, Inc., Harry P. Walsh, and Christine Walsh brought an action for damages against George Holder, James E. Ward, James E. Ward and Associates, Ward Drywall, Inc., and Aaron Ward. Harry and Christine Walsh appeal the district court's entry of summary judgment against them on their breach of settlement agreement claim. The Walshs also appeal the court's dismissal, after trial, of their request that the court foreclose property owned by George Holder. For the reasons set forth below, we affirm.

The circumstances giving rise to this two-part appeal are complicated, span several years of conflict between the parties, and involve two separate sets of facts. The first issue on appeal concerns the dis-

[*] The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

trict court's grant of summary judgment against the Walshs on their breach of settlement agreement claim. The court granted summary judgment on this matter to George Holder, James Ward, Aaron Ward, James E. Ward and Associates, and Ward Drywall, Inc., on June 20, 1990. The court based its judgment on various grounds including that the statute of frauds precluded enforcement of the settlement agreement, that the Walshs had waived their rights under the settlement agreement by proceeding with the chancery suit, and, that the claim was res judicata and collaterally estopped following the chancery court's determination on the merits. The other issue on appeal concerns the district court's dismissal, after trial, of a foreclosure claim brought by the Walshs against property now owned by George Holder. The district court entered this judgment, in favor of Holder, on November 8, 1990. The court found that the Walshs had merely discharged their own obligation when they made payment on the bank note secured by a deed of trust on property now owned by George Holder.

These two judgments disposed of all matters pending against all parties, some of whom were represented on appeal and some of whom were not. Our judgment, rendered below, relates to all matters appealed.

*Breach of Settlement Agreement Claim*

In March of 1986, the Walshs filed a lawsuit, based on disputes between Ward and the Walshs, over property development practices. The suit was filed against Holder and James Ward in the Chancery Court for Davidson County, Tennessee. Aaron Ward, a defendant in the suit for damages for breach of settlement agreement, was not a party to the chancery suit. After an extension, the chancery suit trial date was set for September 22, 1987. Shortly before the chancery suit trial was to start, the Walshs allege that the parties reached a settlement agreement. In reliance on the agreement, counsel for the Walshs advised the chancellor's office that a settlement had been reached. The parties gave the court no order of settlement, however, so the chancellor dismissed the suit on October 30, 1987.

Later, on the Walshs' motion, the chancellor set aside the October 30 dismissal but rejected the Walshs' request to amend the chancery suit to include a claim for damages stemming from breach of the alleged settlement agreement. The Walshs never appealed the chancellor's refusal on this issue. Instead, the Walshs went to trial on the chancery suit, in January, 1988, and the chancellor entered judgment against the Walshs upon completion of the trial. The Walshs then tried to bring the breach of settlement agreement claim in federal district court. After losing on summary judgment, this appeal ensued. On appeal, the Walshs argue that the district court erred in finding that the parties did not enter into a settlement agreement and that there was no material fact in issue. Further, the Walshs claim the agreement does not fall within the statute of frauds but, even if it did, Holder's and the Wards' admissions satisfied the statute of frauds. The Walshs also argue that the trial court erred in finding they had waived their rights under the settlement agreement by going to trial on the merits in the chancery court and that, contrary to the district court's determination, their claim against Holder and the Wards is not barred by res judicata or collateral estoppel. Finally, the Walshs claim the district court improperly granted summary judgment when the court never ruled on the Walshs' Motion for Contempt involving discovery violations made by James Ward.

In reviewing a grant of summary judgment, we use the same test as that used by the district court. *See EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir. 1990). Summary judgment is proper under Fed.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir.1988). With regard to materiality, "[o]nly disputes over facts

that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Likewise, a dispute about a material fact must be "genuine" such that it concerns evidence upon which the jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ In *Whitfield v. City of Knoxville*, 756 F.2d 455 (6th Cir.1985), this court found that res judicata principles apply where a second lawsuit involves the same parties, acting in the same capacities, and touching the same subject matter as the first suit. *Whitfield* also distinguishes the collateral estoppel doctrine, which precludes litigation of an issue already resolved in prior litigation, from res judicata. In contrast to collateral estoppel, res judicata bars litigation in a second suit of claims that were unsuccessfully raised or that should have been raised, but were not, in the prior suit. *Id.* at 459 n. 5.

■ The district court explicitly concluded that collateral estoppel (issue preclusion) bars the Walshs' breach of settlement agreement claim. The court, however, quoted from *Whitfield* a passage describing the application of res judicata (claim preclusion) principles. Both doctrines bar the Walshs' settlement agreement claim. The Walshs requested the chancellor amend their complaint to include the breach of settlement agreement claim. When the chancellor denied this request, the Walshs chose not to appeal and so the chancellor's determination became a final judgment on the issue. Thus, under the doctrines of collateral estoppel and res judicata, the plaintiffs here have tried the settlement agreement issue and lost and cannot re-litigate on this point in federal district court.

■ Similarly, the Walshs waived their right to bring the settlement agreement claim. As the district court observed, following dismissal of the initial action, the Walshs continued negotiating. Then, before the parties executed the agreement, the Walshs voluntarily chose to reinstate the lawsuit. The Walshs contend that there was already a binding settlement in place when they reinstated the suit. However, because they never appealed this point when the chancellor denied their motion to amend, the Walshs waived any rights under the settlement agreement. *Chattem, Inc. v. Provident Life & Accident Insurance Co.*, 676 S.W.2d 953, 955–56 (Tenn.1984) (waiver is a voluntary relinquishment of a known right).

■ The preceding analysis explains the court's entry of judgment against the Walshs with regard to their claims against George Holder, James Ward, James E. Ward and Associates, and Ward Drywall, Inc. This analysis, however, does not prevent suit against Aaron Ward. Nonetheless, suit against Aaron Ward will fail because of the statute of frauds. According to Tenn.Code Ann. 29–2–101(a)(5) (Supp.1989), "No action shall be brought ... [u]pon any contract for the sale of lands ... unless ... in writing, and signed by the party to be charged therewith." The party to be "charged therewith" is the owner of the interest in real property to be conveyed and so such person's signature is needed. *Southern Industrial Banking Corp. v. Delta Properties, Inc.*, 542 S.W.2d 815, 818 (Tenn.1976).

As the district court observed, the draft settlement agreement expressly states that "James Ward, James E. Ward and Assoc., Inc., and Ward Drywall shall convey" certain real estate to Walsh. Thus, the absence of any signature causes that part of the agreement, at least, to fail. Further, although the statute of frauds expressly voids only this portion of the draft settlement agreement, the district court properly found that the whole draft agreement was unenforceable since the proposed conveyance of land represented an "integral part of the negotiations between the parties."

The Walshs claim that they were only conveying a partnership interest in real property as opposed to conveying the actu-

al property. The Walshs argue that because the real property here was owned by "Ward and Walsh," a partnership, it was personalty not governed by the statute of frauds. This assertion, however, flies in the face of reason, particularly in light of the Walshs own presentation of the facts. As the district court noted, the Walshs themselves referred to the conveyance as one involving real property and not a partnership interest: "Ward would convey to Walsh certain real property." Also, the draft settlement agreement directs Ward to convey an interest in land, not his partnership interest.

■ Though it is a closer question, there was also no error in granting summary judgment to the defendants without first determining if they had concealed or destroyed documents. On appeal the Walshs argue that the district court never ruled on their motion for contempt prior to the entry of summary judgment against them. The motion claimed improper conduct by the defendants during discovery. Caselaw indicates that parties should be able to "complete" discovery before having to resist summary judgment. *See Routman v. Automatic Data Processing, Inc.,* 873 F.2d 970, 971 (6th Cir.1989) (summary judgment should not be granted before discovery is completed); *Tarleton v. Meharry Medical College,* 717 F.2d 1523, 1534–35 (6th Cir. 1983) (district court abused discretion by failing to address motion seeking additional discovery time). In *Tarleton,* the appellant's affidavit concerning a discovery matter created a "genuine issue as to [a] material fact" and so the defendant's refusal to provide responsive answers to plaintiff's interrogatories frustrated the plaintiff's attempt to discover potentially material and relevant information. The plaintiff in *Tarleton* filed a motion to continue discovery, objecting to defendant's evasion, but the district court never ruled on this motion before deciding the defendant's motion for summary judgment. On appeal, we found that it does "not necessarily preclude the possibility that further discovery may be inappropriate because of undue delay, burden or expense ... [but] defendants have a heavy burden in resisting discovery given the facial reasonableness

of the interrogatories in question." *Id.* at 1535.

At the other end of the spectrum, and in stark contrast to *Tarleton,* is *Chilingirian v. Boris,* 882 F.2d 200 (6th Cir.1989). In *Chilingirian,* the court found summary judgment was proper despite the non-occurrence of discovery prior to the judgment, as there was no showing that discovery would have disclosed disputed material facts. *Id.* at 203.

Here, the district court granted the Walshs' request for oral argument on their motion for contempt and sanctions against Ward. The district court set the oral argument for June 18, 1990, the same date the court was to hear the motion for summary judgment. Thus, the Walshs knew well before going into the hearing on June 18 that the court would not only be addressing their discovery claim but the summary judgment motion. Although the Walshs claim that Ward destroyed and/or concealed special documents, and that such documents may in turn provide information to rebut the statute of frauds problem, the district court acted properly when it entered summary judgment against the Walshs. First, discovery was essentially complete at this point and Ward had produced the remainder of his file by the second sitting of his deposition. Second, the Walshs were given full access to Ward's attorney's files in the chancery action. Third, and most importantly, given the resolution of this case on collateral estoppel and res judicata grounds by the district court, the relevance and materiality of any of the allegedly improperly withheld discovery would be pertinent only to a claim against Aaron Ward, and only then, if it went to eliminating the statute of frauds element that currently bars any cause of action by the Walshs against Aaron Ward. Weighing these factors, and taking into consideration that the Walshs do not appear to have made any substantive showing that they were prejudiced, the district court was within its discretion to order summary judgment on June 18.

*Request for Foreclosure of Holder Property*

The second issue on appeal involves the district court's dismissal, after trial, of a

foreclosure claim brought by the Walshs against property now owned by George Holder. "Ward and Walsh," a partnership representing James Ward and Harry Walsh, formerly owned the disputed property, which is located in Nashville. The partnership was formed in 1983, in Nashville, under the Tennessee Uniform Partnership Act, with its principal offices in Nashville. In 1984, the partnership borrowed $160,000 from a Louisiana bank ["the bank"] to finance construction on the subject property. Walsh and Ward executed a promissory note secured by a deed of trust in favor of the bank. In 1987, a Nashville savings and loan ["the S & L"] made another loan for $147,000 and Walsh and Ward applied this amount to the 1984 bank loan. The $147,000 did not cover the entire balance on the 1984 bank loan, however, and over $25,000 remained outstanding on the first loan. After the S & L loan became delinquent, the S & L foreclosed on the property and sold it to Holder for $163,-000 in December, 1987.

Following the foreclosure, Walsh continued to make payments on the bank note. In April 1988, Harry and Christine Walsh purchased the note for $12,371.71. At trial, the Walshs sought a declaration from the district court that they are subordinated to the rights of the bank in the first deed of trust and may proceed against Holder's property. On November 8, 1990, the district court dismissed the request for declaratory judgment brought by Harry and Christine Walsh.

In reaching its decision the district court found that Tennessee, not Louisiana law governed, that the Walshs merely discharged their own obligation and so were not entitled to legal, equitable, or conventional subrogation, and, that Christine Walsh was a mere volunteer and not entitled to legal, equitable, or conventional subrogation. On appeal, the Walshs argue that the district court erred by finding that the Walshs were not entitled to foreclose either as subrogees or as transferees of the promissory note secured by a recorded deed of trust. First, the Walshs argue, the district court improperly determined that Tennessee, not Louisiana law applied. Fur-ther, the Walshs argue, the district court improperly found that Harry Walsh merely discharged his own obligation when he paid the bank, and that Christine Walsh was a mere volunteer.

■ The trial court properly determined that Tennessee law governs the case and that neither Harry or Christine Walsh were subrogated to the bank. Admittedly, the first loan was contracted in Louisiana, Walsh and the bank are Louisiana residents, and the address of the partnership on the promissory notes is a Louisiana address. More importantly though, the Ward and Walsh partnership was formed as a Tennessee partnership, the partnership agreement incorporates Tennessee law, and specifically with regard to liabilities, the agreement expressly states that a general partner is liable "jointly and severally" for everything chargeable to the partnership, in accordance with the Tennessee Uniform Partnership Act.

■ On the merits, the court found that even though he paid off the note, Harry Walsh was not subrogated to the bank's right of foreclosure, because Walsh was merely paying off of a debt he already owed to the bank under the partnership. Under Tenn.Code Ann. § 61–1–114, a general partner is liable "jointly and severally for everything chargeable to his partnership." Given the application of Tennessee law, then, Ward and Walsh are jointly and severally liable. Walsh's payment of the remainder of the outstanding debt to the bank merely met his own obligation as a partner under the promissory note to the bank.

■ Christine Walsh is not subrogated to the rights of the creditor since she paid the debt owed as a "volunteer." According to 83 C.J.S., p. 601, Subrogation, § 9:

It always requires something more than the mere payment of a debt in order to entitle the person paying it to be substituted in the place of the original creditor. Subrogation goes on the theory that the one invoking the remedy rightfully discharged the debt. A mere volunteer ... is not entitled to subrogation to the creditor's rights, where he pays without an

assignment of the debt or an agreement for subrogation. A 'volunteer' ... within this rule is one who has no obligation or liability to pay the debt and has no interest in the property affected by the debt.

*See also Goodfriend v. United American Bank,* 637 S.W.2d 870 (Tenn.App.1982) (where the principal reason for the party paying the debt was so they could claim the sales tax as a deduction on their federal income tax, they are volunteers).

██ Lastly, and as the district court observed, even if Walsh were subrogated to the rights of the bank, Holder would have a valid claim against "Ward and Walsh," and thus Walsh individually, if Walsh foreclosed and Holder paid off the debt. The district court correctly reasoned that it would be absurd for the Walshs to prevail when the end result would simply be that Holder would pay off the debt owed on the note and then have a claim against the Walshs because Holder would then be subrogated to the rights of the bank.

Therefore, we affirm.