**KAND MEDICAL, INC.,**
**Plaintiff–Appellant,**

v.

**FREUND MEDICAL PRODUCTS,**
**INC., et al., Defendants,**

**Mansfield Scientific, Inc.,**
**Defendant–Appellee.**

**No. 91–3700.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1992.

Decided April 29, 1992.

Rehearing and Rehearing En Banc
Denied June 17, 1992.

David R. Kelleher (argued and briefed), Baker & Hostetler, Columbus, Ohio, for plaintiff-appellant.

Armistead W. Gilliam, Jr., Ann Wightman (argued and briefed), and Mary L. Wiseman, Faruki, Gilliam & Ireland, Dayton, Ohio, for defendant-appellee.

Before: KEITH and MARTIN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Kand Medical, Inc., appeals the district court's dismissal of its claims against Mansfield Scientific, Inc., for intentional inducement of contractual breach.

Kand entered into a contract with Freund Medical Products, Inc., on January 5, 1987. The contract made Kand the exclusive distributor of Freund medical products in California and Arizona. The Freund products distributed by Kand included medical clamps, pads, and specially designed disposable syringes used in heart catheterization procedures. In August, Freund exhibited a product called the "Inflation Ease" at a trade show attended by Mansfield co-founder, John Abele. This device would be used to monitor the pressure of balloons used in heart angioplasty procedures. Abele was impressed by Freund's device and instructed Mansfield's president to explore the possibility of a business relationship with Freund. In September, a Mansfield representative met with Freund to discuss a potential distribution agreement between the two companies. Mansfield emphasized that it would only consider an exclusive, nationwide distributorship for Freund products. Mansfield and Freund reached a preliminary agreement that Mansfield would pay Freund $300,000 for such an arrangement.

During negotiations, Mansfield inquired if Freund had any current contracts with other dealers that would hinder Freund in negotiating an exclusive dealership contract with Mansfield. Freund responded that its current dealer-contracts were exclusive but "exitable." Freund indicated that it was displeased with the productivity of its current distributors and was considering terminating the current contracts. Freund, however, never specifically mentioned Kand by name. Mansfield did not inquire further as to the distributor contracts or the nature of Freund's obligations under them. On November 3, Freund and Mansfield executed a contract making Mansfield the exclusive distributor of Freund products. The contract was effective as of December 15. On November 11, Freund notified its dealers, including Kand, that it was terminating distributor contracts with them on December 13.

Kand brought its original complaint against Freund for breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel. Subsequently, Kand filed an amended complaint adding Mansfield as a defendant. Kand alleged that Mansfield had tortiously interfered with the Freund–Kand contract by

inducing the breach and that Mansfield intentionally interfered with Kand's contractual relations with Kand's hospital-customers. Kand sought punitive damages from Mansfield. Kand has since settled with Freund; however, Freund remains a party to the litigation because of a cross-claim filed against it by Mansfield.

Mansfield moved for summary judgment. The court found that there were no genuine issues of material fact, and that the facts, when construed in the light most favorable to Kand, were insufficient to hold Mansfield liable for intentional inducement of contractual breach. The court also found Mansfield was excused from any liability because it was a "privileged" actor. Finally, the district court rejected Kand's separate claim against Mansfield for allegedly interfering with Kand's "contractual" relationship with various hospital-customers.

Kand appeals the district court's grant of summary judgment to Mansfield. Specifically, Kand objects to the court's finding that Mansfield was privileged in its negotiations with Freund and did not possess actual malice toward Kand when it induced Freund to terminate the distributor contracts. Kand also appeals the court's finding that Mansfield did not intentionally interfere with Kand's contractual relations with its hospital-customers.

■ We examine an appeal of a summary judgment utilizing the same standard of review employed by the district court when it heard the original motion. *Qualicare–Walsh, Inc. v. Ward,* 947 F.2d 823, 825 (6th Cir.1991). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to *any material fact* and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis added). *See Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). A court reviewing summary judgment determinations must determine if there are specific material facts in dispute. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Demonstration of simply "metaphysical doubt as to the material facts" is insufficient. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). We have held that "a dispute about a material fact must be 'genuine' such that it concerns evidence upon which the jury could return a verdict for the nonmoving party." *Qualicare,* 947 F.2d at 826 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Generally, but not always, summary judgment is considered inappropriate where the issues involve intent. *Canderm,* 862 F.2d at 601.

Under Ohio law, we look at plaintiff's claim for intentional interference with contractual relations by reference to the analysis found in the *Restatement (Second) of Torts,* § 766. *Heheman v. E.W. Scripps Co.,* 661 F.2d 1115, 1126–27 (6th Cir.1981). *Heheman* noted that contractual interference occurs where "one who without a privilege to do so, induces or otherwise purposefully causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another." *Id.* (citing *Juhasz v. Quik Shops, Inc.,* 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238 (1977)).

■ Here, the district court found the facts, when construed in the manner most beneficial to Kand, could permit an inference that Mansfield's negotiations with Freund prior to the termination of the distributor contracts on November 11, "caused" Freund's breach of contract with Kand. We agree with the court's determination that a genuine issue of material fact exists in this regard.

Despite the district court's initial determination that Mansfield could be construed as "causing" Freund to breach its contract with Kand, the court found that Mansfield did not have the requisite intent to induce a contractual breach. The court further found that Mansfield was not culpable under prevailing Ohio tort law because Mans-

field was a privileged actor. The court found that Mansfield was privileged because it did not intend to harm Kand and was only acting to further its legitimate economic interests.

Ohio law recognizes the defense of privilege, which is the subject of sections 766 and 767 of the *Restatement (Second) of Torts. Heheman,* 661 F.2d at 1127. Comment (b) to section 767 states:

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

Section 767 and its comments emphasize that courts must balance several factors that include (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties. *Id.* The *Restatement* considers the nature of the actor's conduct the "chief factor" that courts should consider. *Id.* at Comment (c). The district court properly weighed the various factors and found Mansfield was privileged in this case. All of the factors described below go to the "nature" of Mansfield's conduct, the central element to be considered under the *Restatement* analysis.

First, as to Mansfield's motive, the court found there was no evidence to suggest Mansfield's primary objective was to interfere with Freund's distributor's contracts. *See Restatement (Second) of Torts,* § 767(b). All that the record reveals is that Mansfield entered into a contract with Freund knowing that other contracts were in existence that could not be performed concurrently with Mansfield's. This is expressly legal conduct under Ohio law. *Heheman,* 661 F.2d at 1127 (defendant knew of the third party's contractual obligations but because defendant was merely using its bargaining power to fullest extent legally permissible, it was not liable to plaintiff).

Second, while Kand admittedly had a significant contractual interest with which Mansfield interfered, other elements analyzed by the court exculpate Mansfield. *See Restatement (Second) of Torts,* § 767(c) & (d). These elements include Mansfield's lack of ill will or malice toward Kand and Mansfield's recognized right under Ohio law to expand its business by lawful and legitimate means. As already noted, we have held such means to be lawful even where a third party enters into a contract with one of two contracting parties with knowledge of the existing contract. *Id.* (citing *Horth v. American Aggregates Corp.,* 31 Ohio Law Abs. 331, 20 O.O. 76, 35 N.E.2d 592, 598 (Oh.App. 1940)).

Third, the district court found that policy considerations in the present case supported its determination in favor of Mansfield. *See Restatement (Second) of Torts,* § 767(e). Ohio has demonstrated that it highly values competitive enterprise and, while such enterprise is not permitted where illegal, here Mansfield believed Freund could validly terminate its agreement with the current distributors because Freund had indicated that it was dissatisfied with the distributors' performance. There is no evidence in the record of improper purpose or motive on Kand's part, only that Kand had significant business reasons for its conduct.

Fourth, the district court considered the proximity of Mansfield to Freund's breach of contract with Kand and the relationship between Mansfield and Kand. *See Restatement Second of Torts,* § 767(f). The district court found that Mansfield's proximity to Freund's breach with Kand was impossible to determine from the record and so a genuine issue of material fact

could be inferred. Nonetheless, the court found the record clearly demonstrated Freund had told Mansfield that it was displeased with its distributors' performance and that the contracts were "exitable." Given these facts, the court found Mansfield's relationship to the alleged breach of contract was legally, if not factually, attenuated. Further, the court found that the relations between Mansfield and Kand, though competitive, created no genuine issues of material fact such that a reasonable person could conclude Mansfield's actions were not privileged. It is impossible, the court found, for Mansfield to be construed as possessing any specific intent to harm Kand rather than simply an intent to advance its own commercial and economic position. We agree.

Two factors are particularly significant to our determination. First, there was no allegation and no evidence that Mansfield engaged in any unlawful or illicit conduct in allegedly causing Freund to terminate its contract with Kand. The record reveals no evidence of fraud, misrepresentation, coercion, or threats. Freund, in fact, initially solicited the $300,000 payment agreed upon between Freund and Mansfield. Second, while Mansfield could be construed as attempting to induce Freund to end its current contracts and begin a new one with Mansfield, there is no evidence that Mansfield intended Freund to *breach* the original contracts. Indeed, Freund represented to Mansfield that the contracts were "exitable" and that it was displeased with the performance of the original distributors, including Kand. There is a significant distinction between intentionally inducing a breach of contract and intending to induce the lawful termination of a contract. Based on all the evidence regarding Mansfield's conduct and intentions, we agree with the district court that Mansfield's actions fall in to the latter category of intending to induce a lawful termination of a contract. Although summary judgment is often inappropriate where the issues involve intent, *see Canderm*, 862 F.2d at 601, summary judgment is not inappropriate here. *See Heheman*, 661 F.2d at 1127 (summary judgment appropriate on intent issue even though summary judgment on intent can often be inappropriate).

Kand's second argument on appeal is that Mansfield intentionally interfered with Kand's contracts with its hospital-customers. Mansfield, as part of its agreement with Freund, was given Freund's current distributors' customer lists and sales information. Kand's individual customer list and sales information was included in the information given by Freund to Mansfield. We find Kand's second argument to be without merit because Kand never established any contractual relationship with its hospital-customers. At best, the evidence revealed nothing more than an oral "understanding" between Kand and its customers. Accordingly, Mansfield can not be found to have intentionally interfered with any "contracts" between Kand and its hospital-customers because no such contracts exist.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Mansfield, and the court's refusal to grant summary judgment to Kand.