25 F.3d 1048
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 George EVANS, et al., Plaintiffs-Appellants,
v.
SAAB CARS USA, INC., Defendant-Appellee.
 No. 93-3232.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1994.
 
 1
 Before: RYAN and NORRIS, Circuit Judges; and BERTELSMAN, Chief District Judge.*
 
 
 2
 PER CURIAM. Plaintiffs originally filed this action in state court seeking damages and injunctive relief for violation of the Ohio Dealer Act, Ohio Rev.Code Ann. Secs. 4517.01 et seq. (Anderson 1990 & Supp.1993), and for common law breach of contract and tortious interference with contract. Defendant counterclaimed for unpaid goods it had delivered to plaintiff.
 
 
 3
 Defendant removed the action to federal court on the basis of diversity jurisdiction and filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The district court treated the motion as a motion for summary judgment and granted it. It dismissed plaintiffs' complaint, and remanded the counterclaim to state court. Plaintiffs appealed.
 
 
 4
 The material facts are not in dispute. Plaintiff George Evans was the president of the corporate plaintiffs Quest Motors Sales, Inc. d/b/a Quest Motors, Inc. ("Quest Motors"), which operated automobile dealerships. One such dealership was under an agreement with defendant Saab Cars USA, Inc. ("Saab"). Under the terms of this franchise agreement, Saab could terminate the agreement in the event Quest Motors ceased operating or in the event Quest Motors attempted to transfer or assign the agreement without prior written approval by Saab.
 
 
 5
 Quest Motors ceased operating. Its dealerships were located on property owned by its creditor Farina Realty, Inc. ("Farina"). Farina acquired Quest Motors' assets. However, there was no transfer of the franchise from Quest Motors to Farina, nor did Farina acquire it as part of the assets.
 
 
 6
 In turn, Farina entered into a contingent purchase agreement with another party, Kempthorn M-B, Inc. ("Kempthorn"). Under the terms of the purchase agreement, Farina was to sell Kempthorn its real estate and any assets remaining in the various dealerships. The agreement was contingent upon the different franchisors, including Saab, terminating their franchises with Quest Motors and reissuing the franchises to Kempthorn.
 
 
 7
 There was no contract between Quest Motors and Kempthorn for a "sale" of the franchise. Also, although it did give its "consent" to the purchase agreement, Quest Motors was not a party to the purchase agreement. Furthermore, Quest Motors had not secured prior approval for the proposed "sale" from Saab. Instead, after the purchase agreement was signed, Quest Motors notified Saab that the franchise had been sold. Saab responded with a letter stating that Quest Motors had not sought, nor had Saab given, its written approval for the sale as required by the franchise agreement; that it did not consent to the "sale;" and that it was terminating the franchise.
 
 
 8
 Thereafter, Quest Motors filed an administrative complaint with the Ohio Motor Vehicle Dealers Board protesting Saab's refusal to consent to the sale and transfer the franchise. It sought an immediate hearing and injunctive relief prohibiting Saab from relocating the franchise and requiring it to permit the transfer of the franchise to Kempthorn. However, after inquiring but receiving no response from Quest Motors, the administrative hearing examiner recommended the protest be dismissed with prejudice for failure to prosecute.
 
 
 9
 Quest Motors did not file objections to the recommendation. Instead, it filed this suit in state court. The recommendation was adopted and a final adjudication order entered dismissing Quest Motors' administrative action. The order specifically notes the manner in which the decision could be appealed, but Quest Motors did not seek judicial review of the administrative proceeding.
 
 
 10
 Having found no Ohio law to the contrary, we agree with the district court's construction of the Ohio Dealers Act and conclusion that relitigation of plaintiffs' claim for a violation of that statute is barred. For the reasons more fully discussed in the district court opinion, the Act requires that the protestor make an election to pursue either an administrative remedy or a damages remedy.
 
 
 11
 Furthermore, the district court properly dismissed plaintiffs' breach of contract claim finding that the agreement authorized Saab to terminate the franchise under the undisputed circumstances.
 
 
 12
 Finally, although we agree with the district court that dismissal of the statutory claim required dismissal of the claim for tortious interference with contract, we agree with the dismissal of this claim for additional reasons. Because Quest Motors had ceased operations and Saab was entitled to terminate the franchise under the terms of its agreement, and because Quest Motors was not a party to the contract for the "sale" of the franchise, plaintiffs fail to state a claim under Juhasz v. Quik Shops, Inc., 55 Ohio App.2d 51, 56-57, 379 N.E.2d 235, 238-39 (Summit County 1977), which cites Restatement (Second) of Torts, Secs. 766, 767, and 773 for elements of the cause of action and defenses of privilege.[1]
 
 
 13
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 See also Kand Medical, Inc. v. Freund Medical Prods., Inc., 963 F.2d 125, 127 (6th Cir.1992) (noting elements of claim set forth in Juhasz ); Singer v. Fairborn, 73 Ohio App.3d 809, 820, 598 N.E.2d 806, 813 (Greene County 1991) (where defendants did not cause or induce a third party to perform or enter into a contract or continue a business relationship with plaintiff, no claim stated); 3H & N v. L.P. Cavett Co., 1991 Westlaw 40552 (Ohio Ct.App. Hamilton County 1991) (no claim where plaintiff could not show any legally enforceable contract between it and third party); Restatement (Second) of Torts, Sec. 766B ("One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other"); id. Sec. 773 ("One who, by asserting in good faith a legally protected interest of his own ... intentionally causes a third person not to ... enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction."); id. Sec. 766, comment p. ("The person protected by the rule stated in this Section is the specified person with whom the third person had a contract that the actor caused him not to perform.")