OPINION
Appellant, Linda Bowshier ("Bowshier"), appeals from a judgment of the Franklin County Court of Common Pleas reversing a decision of the Ohio Motor Vehicle Dealers Board ("the board") in which the board found that appellee, Chrysler Corporation ("Chrysler"), had failed to give timely notice as required by R.C. 4517.56(B).
In 1994, Hitchcock Auto Group, Inc. ("HAG"), became a Jeep-Eagle dealer in Springfield, Ohio, operating the dealership at premises leased from Bowshier and her husband. On June 7, 1998, Bowshier entered an agreement with HAG to buy the dealership, including a transfer of assets and franchise rights as a dealer of Jeep and Eagle brands, for which Chrysler is the franchisor.
In connection with this agreement, Bowshier submitted a dealer application to Chrysler on June 7, 1998, seeking approval of the proposed transfer. Bowshier later provided additional information, supplementing her application. In mid-July 1998, Chrysler Financial Corporation ("CFC") exercised its rights as a secured party in regard to certain assets purchased by HAG, and took possession of the assets (including motor vehicles) on the dealership premises.
On August 15, 1998, Bowshier and her husband ("the Bowshiers") filed an action against Chrysler and CFC in the Clark County Court of Common Pleas. They alleged that Bowshier had submitted an application to Chrysler for approval as a franchise holder of the Jeep-Eagle dealership, but that Chrysler had never approved or disapproved it. They asserted that CFC had taken possession of assets/collateral on the premises but that Bowshier had the right to redeem the collateral, and that Bowshier had offered to fulfill the obligations secured by the collateral, which CFC had refused. The Bowshiers alleged that CFC's seizure of the collateral, and its entering into agreements to sell the collateral, would cause irreparable harm to them.
The Bowshiers alleged that they were entitled to specific performance in the return of collateral in which Bowshier possessed a security interest, and were entitled to specific performance in regard to the right of redemption. The Bowshiers requested temporary, preliminary and injunctive relief against Chrysler and CFC, prohibiting them from removing any claimed collateral or personal property from the premises and restraining Chrysler from granting to anyone else the franchise rights held by HAG. The Bowshiers sought an order requiring CFC to return all motor vehicles removed from the premises and to honor Bowshier's right to redeem the assets.
The Bowshiers also alleged that defendants had tortiously interfered with business transactions between Bowshier and HAG by failing to issue a decision on her application and by allowing CFC, its wholly-owned subsidiary, to seize franchise vehicles without due consideration of Bowshier's application. The Bowshiers asked for "specific performance" of "the application" and for an order requiring defendants "to take those steps necessary to complete Linda Bowshier's expectation interest" in her July 7, 1998 agreement with HAG.
As owners of the real estate on which the dealership was located, the Bowshiers asserted inter alia that Chrysler and CFC were tortiously interfering with their property rights under an agreement and lease executed in 1994, and that Chrysler and CFC were liable for all rents and monies due under the January 1994 agreement and lease. Further, the Bowshiers asserted that CFC held a note secured by their mortgage on the premises, and that CFC, under the guise of preserving its collateral, was engaging in self-dealing by orchestrating a default by the Bowshiers on the real estate.
The prayer for relief also included a request for compensatory damages for the balance due on the lease and for tortious and fraudulent interference with the Bowshiers' rights as owners of the real estate. They also sought punitive damages for violation of the right of redemption, for tortious interference with real estate rights, for tortious interference with business transactions, and for "breach of their rights of notification pursuant to O.R.C. § 1309.47."
The complaint also included claims asserted solely by Jack Bowshier, not a party to this appeal. The Clark County Court of Common Pleas issued a temporary restraining order. Chrysler and CFC removed the case to federal court, and the restraining order expired after fourteen days.
On September 2, 1998, the Bowshiers amended the complaint. Among other things, they joined as defendants HAG and the buyers of the collateral. Most of the claims previously asserted were reiterated. For example, the Bowshiers continued to allege tortious interference with the lease agreement, tortious interference with real property interests, and wrongfully causing default on the real estate. They further asserted that Chrysler and CFC remained in possession of the dealership premises to the exclusion of all others without paying rent.
Bowshier continued to allege Chrysler's tortious interference in her business transactions with HAG by failing to rule on her application and by allowing HAG's assets to be transferred by CFC without due consideration of her application. In connection with her allegations that Chrysler failed to rule on her application, it appears that Bowshier claims that, because Chrysler failed to timely reject her application, it must be deemed to have accepted it, and that she was therefore entitled to an order giving formal effect to that approval-by-default.
The Bowshiers also added a claim for "loss of a substantial business opportunity," alleging that Chrysler had "violated Bowshier's interests" in the franchise under R.C. 4517.56.
In the amended complaint, the Bowshiers continued to seek injunctive relief prohibiting Chrysler and CFC from removing property from the premises and from granting the franchise to anyone else. Bowshier continued to seek an order requiring Chrysler and/or CFC, inter alia, to return all vehicles removed from the premises and to permit her to redeem the assets.
The Bowshiers' demand for compensatory damages included payment of unpaid rent and the balance due on the lease, damages for tortious interference with their interests as real estate owners, tortious interference with business transactions with HAG, loss of business opportunity, and failure to "timely approve" Bowshier's application. The amended complaint again requested punitive damages. It included claims relating solely to Mr. Bowshier, and set forth specific demands against HAG and the buyers of the seized collateral, claims that are not at issue here.
On September 4, 1998, Bowshier filed an administrative protest with the board contending that Chrysler violated R.C. 4517.56 by failing to provide her with written notice of its approval or disapproval of her application within thirty days of receiving written notice of the proposed transfer. On September 8, 1998, Bowshier received a letter from Chrysler informing her that it refused to approve her dealership application and stating its reasons. On September 18, 1998, Bowshier filed a supplemental protest with the board, contending that Chrysler lacked good cause as required by statute to refuse approval of the proposed transfer.
In October 1998, Chrysler filed a motion for summary judgment with the board, arguing, among other things, that Bowshier's administrative protest was barred because she had previously filed a civil action for her claims and that its notice was timely. Bowshier filed a cross-motion for summary judgment.
In November 1998, a hearing examiner for the board issued a report and recommendation, granting Bowshier's motion and denying Chrysler's. The hearing examiner concluded:
 Respondent failed to comply with the mandatory requirements of R.C. § 4517.56(B) when it failed to give [Bowshier] written notice by certified mail of its approval or rejection of the proposed sale and/or transfer of Hitchcock Auto Group, Inc.'s dealership assets and certain franchise rights within thirty days of receipt of written notice of the proposed transfer.
 Although Respondent's notice of rejection identifies five grounds upon which Respondent relied in rejecting [Bowshier's] application, Respondent's notice is fatally defective because it was not timely under R.C. § 4517.56(B), even if the cited grounds otherwise would have constituted "good cause" for purposes of R.C. § 4517.56. [Emphasis sic.]
The hearing examiner also concluded that, under R.C. 4517.65(B), the "election of remedies" provision, Bowshier's administrative protest was not barred.
The board adopted the report and recommendation of the hearing examiner, and Chrysler appealed to the Franklin County Court of Common Pleas under R.C. Chapter 119. In its judgment, entered March 29, 2000, the court observed that the facts were undisputed and that there were essentially two issues: (1) whether the thirty-day period for approval or disapproval of the application began when the application was first received, or when the franchisor received all the requested information; and (2) whether Bowshier's prior filing of a civil suit against Chrysler precluded her administrative protest.
The court addressed only the second issue, finding it dispositive. The court reversed the board's decision, finding it contrary to law. The court concluded that Bowshier's administrative protest was barred by the "election of remedies" provision in R.C. 4517.65(B) as a matter of law.
Bowshier timely appeals this judgment of the Franklin County Court of Common Pleas, assigning the following errors:
 I. THE COMMON PLEAS COURT, ON APPEAL FROM THE MOTOR VEHICLE DEALER BOARD ERRED IN RULING THE "ELECTION OF REMEDIES" PROVISION IN O.R.C. § 4517.65(B) PRECLUDED APPELLANT'S PROTEST.
 II. THE COMMON PLEAS COURT ERRED IN FOLLOWING EVANS V. SAAB CARS.
 III. THE COMMON PLEAS COURT ERRED IN REVERSING THE BOARD'S DECISION THAT THE "ELECTION" PROVISION WAS NOT TRIGGERED UNTIL CHRYSLER DELIVERED TO APPE[LLAN]T ITS WRITTEN "REFUSAL TO APPROVE" THE TRANSFER.
We address Bowshier's first two assignments of error together. Essentially, the issue before this court is whether the common pleas court erred in its interpretation of R.C. 4517.65(B). We do not address whether Chrysler timely complied with the notice requirement in R.C.4517.56, nor whether it had good cause to disapprove Bowshier's request to transfer the dealership, because those issues were not addressed by the common pleas court. Although this appeal arose as an administrative appeal under R.C. 119.12, on purely legal questions, such as the interpretation of a statute, this court's review is plenary. Steinfels v. Ohio Dept. of Commerce, Div. of Securities (1998), 129 Ohio App.3d 800,803.
Under R.C. 4517.56(A), a person who proposes to buy a dealership, that is, the proposed transferee of franchise rights and assets, must notify the franchisor of the proposal, setting forth specific information and assurances. The franchisor then evaluates the prospective transfer "on the basis of reasonable and objective criteria fairly and objectively applied." R.C. 4517.56(A).
Under R.C. 4517.56(D), a franchisor must have "good cause" to refuse to approve the transfer of the franchise assets and rights. R.C. 4517.56(E) lists specific circumstances that do not constitute good cause, such as the transferee's intention to work part-time or residence outside the market area.
Further, R.C. 4517.56(B) requires the franchisor to notify the prospective transferee within thirty days if it decides not to approve the sale/transfer:
 The franchisor shall provide the franchisee and the prospective transferee with written notice by certified mail of any refusal to approve a sale or transfer of the business and assets * * * within thirty days of receipt of the written notice advising of the proposed transfer. The notice shall specify the objective criteria used to evaluate the prospective transferee and the criteria which the transferee failed to meet.
R.C. 4517.56(C) provides that, within ninety days of receipt of a notice of refusal, the prospective transferee may file a protest against the refusal with the board.
Next, R.C. 4517.65 addresses franchisor liability and an alternative to filing the administrative protest:
 (A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees.
 (B) When a franchisor terminates, cancels, or fails to renew a franchise without the prior consent of the franchisee, or refuses to approve the sale or transfer of the business or a controlling interest in a franchisee for other than good cause, the franchisee or prospective transferee may, in lieu of filing a protest with the motor vehicle dealers board, recover damages under division (A) of this section.
 (C) The franchisor shall be liable * * * for reasonable attorney fees * * * and any other costs incurred * * * in any protest * * * in which the * * * board finds in favor of the protesting franchisee or prospective transferee.
 (D) The burden of proof to establish the franchisor's good cause shall be on the franchisor in protests and actions * * *. [Emphasis added.]
The language of R.C. 4517.65(A), quoted above, makes plain that an aggrieved "franchisee" may seek double damages in a court action for a broad range of statutory violations by the franchisor. In contrast, R.C. 4517.65(B) applies only to two types of decisions by a franchisor: the termination, cancellation, or non-renewal of a franchise, and the refusal to approve a sale or transfer of a franchise without good cause. Division (B) explicitly applies to both the "franchisee" and the "prospective transferee," thus providing that, in the specified types of disputes, the prospective franchisee may file an administrative protest or may recover the double damages available under division (A) in a court action. The phrase "in lieu of," in division (B), indicates that the party must elect either a court action for double damages or the administrative protest in regard to the listed issues.
In reaching this conclusion, we agree with Evans v. Saab Cars USA, Inc. (C.A.6, 1994), 25 F.3d 1048 (unpublished; 1994 WL 198174), to the extent that the Sixth Circuit stated that the Motor Vehicle Dealer Act "requires that the protestor make an election to pursue either an administrative remedy or a damages remedy," even though the Sixth Circuit does not specifically cite to R.C. 4517.65(B). However, the ultimate holding of Evans is inapplicable here due to materially different facts.
We conclude that, in regard to the narrow category of issues listed in R.C. 4517.65(B), the aggrieved party must elect a remedy, pursuing his or her claim before either the court or the board. In other words, under the statutory scheme, either the board or the courts may determine whether a franchisor had "good cause" to refuse to approve a sale or transfer of franchise rights and assets, and they can provide different remedies, but the party must elect which remedy to pursue.
However, the alternative-remedy provision, or the "election of remedies" provision, in R.C. 4517.65(B) does not apply to disputes regarding the timeliness of the notice given by the franchisor as required in R.C. 4517.56(B).
Finally, we note that there is no dispute that trial courts can adjudicate the parties' common-law claims and have the power to order injunctive relief, authority that the board does not have.
In the administrative protest involved herein, Bowshier set forth essentially two claims: that Chrysler failed to comply with the timely notice requirement in R.C. 4517.56(B) and disapproved her dealer application without good cause, as prohibited by R.C. 4517.56(X). The "election of remedies" provision does not apply, on its face, to the statutory requirement of timely notice (as noted by the hearing examiner), so it is irrelevant that Bowshier had made numerous claims in the civil action regarding the harm caused by the lack of timely response from Chrysler. Bowshier was not barred by R.C. 4517.65(B) from filing her dispute regarding timeliness in both the administrative forum and the court. Of course, if one forum proceeded to determine that issue, the determination would likely have preclusive effect and would prevent relitigation under a theory of res judicata or collateral estoppel.
The remaining question in regard to election of remedies under R.C.4517.65(B) is whether Bowshier was barred from challenging Chrysler's alleged disapproval without good cause in an administrative protest because she had previously elected the remedy of a civil action for double damages for the lack of good cause supporting the disapproval.
We find that Bowshier did not elect, in the civil action, to pursue the statutory remedy under R.C. 4517.65 for double damages for Chrysler's alleged lack of good cause for disapproving her franchise application in violation of the statute.
The initial complaint asserts a myriad of claims, focusing on the seizure of the dealership assets, the right to redeem the assets, harm to real property rights, and tortious interference with business relationships and transactions. The complaint repeatedly asserts harm caused by delay, including harm from Chrysler's alleged failure to give timely consideration to her application and its failure to give timely notice of its decision on the application. The initial complaint includes no reference to R.C. Chapter 4517 and includes no request for double the actual damages under R.C. 4517.65.
Although the complaint makes a vague request for specific performance or approval of the application, Bowshier appears to assert that, because Chrysler failed to timely reject her application, it must be deemed to have accepted it, and that Chrysler must be held to have approved it by default. Accordingly, this claim appears based on the claim of failure to satisfy the requirement of timely notice — not the claim that Chrysler violated the statutory requirement of good cause for disapproval.
In the amended complaint, the Bowshiers make no demand for double damages under R.C. 4517.65 for a lack of "good cause" in disapproving the application. We recognize that the Bowshiers refer to the statute, but it is a single, vague reference to interference with Bowshier's "interests" under R.C. 4517.56.
In sum, we agree that, if Bowshier sought double damages in court under R.C. 4517.65 for the alleged violation of the "good cause" requirement for disapproval, she could not subsequently seek a remedy in the administrative protest for the same violation. However, we find that Bowshier did not seek double damages in the civil action for violation of the "good cause" requirement. Rather, her administrative protest reveals a clear allegation of violation of the "good cause" requirement, demonstrating that she elected to pursue that alleged violation in the administrative protest. Accordingly, her administrative protest was not barred under the "election of remedies" provision in R.C. 4517.65(B). As we already concluded in regard to the alleged failure to comply with the timely notice requirement, we find that R.C. 4517.65(B) does not require an election of remedy in regard to that violation.
Consequently, we sustain the first and second assignments of error. However, we do not find in the common pleas court's decision the statement or conclusion described in the third assignment of error. Thus, we overrule the third assignment of error as not being properly before the court. Because the common pleas court declined to address the issues related to the period for the approval or disapproval of Bowshier's application due to its conclusion regarding the dispositive nature of the "election of remedies," which we reverse, we remand this cause to the common pleas court to address these issues.
Based upon the foregoing reasons, Bowshier's first and second assignments of error are sustained, while her third assignment of error is overruled. The decision of the Franklin County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this opinion.
 ___________ KENNEDY, J.
BOWMAN and PETREE, JJ., concur.