**FRANKLIN TRACTOR SALES, Plaintiff–Appellant,**

v.

**NEW HOLLAND NORTH AMERICA, INC., Defendant–Appellee.**

No. 03–3520.

United States Court of Appeals, Sixth Circuit.

Aug. 5, 2004.

---

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Robert J. Behal, Connor & Behal, Columbus, OH, for Plaintiff–Appellant.

Michael J. Gorman, James F.B. Daniels, Daniels & Kaplan, Kansas City, MO, for Defendant–Appellee.

Before: BOGGS, Chief Judge, and MOORE, Circuit Judge; and QUIST, District Judge.*

QUIST, District Judge.

Plaintiff–Appellant in this diversity action, Franklin Tractor Sales ("Franklin Tractor"), brought a claim for tortious interference with a business relationship against Defendant–Appellee, New Holland North America, Inc. ("New Holland"). The district court granted summary judgment for New Holland. Franklin Tractor appeals. For the reasons stated below, we affirm the district court's ruling.

## FACTS

New Holland is a manufacturer of construction equipment. Under a series of agreements with New Holland, Franklin Tractor was for many years a dealer of New Holland's equipment. For several years, NationsRent and its predecessors purchased equipment made by New Holland from Franklin Tractor.

On May 28, 1999, New Holland announced a new national accounts program whereby it would begin selling its equipment directly to certain customers, including NationsRent. The program also provided that customers would designate a "delivering dealer" to which New Holland would pay a commission for each sale. Under this system, New Holland began selling equipment directly to NationsRent beginning June 1, 1999. Franklin Tractor received a commission on each sale as a designated "delivering dealer" but alleges that it would have received more sales and more money if the national accounts program had not been instituted.

On August 11, 2000, New Holland issued a memorandum entitled "National Account Procedure Change." Under the change, a company called Keene Transport began performing all dealer preparation and delivery of equipment to New Holland's national accounts, including NationsRent. New Holland says it instituted the proce-

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

dure change to standardize the delivery process for all national accounts, to consolidate tracking of inventory and storage, and to standardize pre-delivery and other charges. After the procedure change, New Holland no longer paid Franklin Tractor commissions for equipment New Holland sold to NationsRent. This action followed.

## STANDARD OF REVIEW

We review de novo a district court's award of summary judgment. *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (per curiam). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists, we must view the facts contained in the record, and all inferences that can be drawn from those facts, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).

## DISCUSSION

Franklin Tractor's claim against New Holland is for tortious interference with a business relationship. "Under Ohio law, a cause of action for [tortious interference with business relations] is made out when' ... one who, *without a privilege to do so,* induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another...." *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995) (quoting *Smith v. Klein,* 23 Ohio App.3d 146, 148 n. 1, 492 N.E.2d 852, 855 n. 1 (1985)). *See also Super Sulky, Inc. v. U.S. Trotting Ass'n,* 174 F.3d 733, 741 (6th Cir.1999) (" 'The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.' ") (quoting *A & B–Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (1995)).[1]

"One of the key elements in a tortious interference claim is the question of whether a defendant's actions were privileged." *Super Sulky,* 174 F.3d at 742. In deciding whether conduct was privileged, or instead constituted "improper interference" under Ohio law, this court has applied the factors contained in the com-

---

1. Courts frequently use common language when discussing what are actually two distinct claims, tortious interference with business relationships and tortious interference with contract rights. The claims "differ only in that the former tort does not require proof of a contractual relationship." *Super Sulky,* 174 F.3d at 741. Tortious interference with a contract requires proof of the following elements: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification or privilege; and (5) resulting damages. *See* *Fred Siegel Co. v. Arter & Hadden,* 85 Ohio St.3d 171, 171–72, 707 N.E.2d 853, 855 (1999); *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 416, 650 N.E.2d 863, 864 (1995). Tortious interference with a business relationship has similar elements, but occurs when the result of the improper interference is not a breach of contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff. *See A & B–Abell Elevator Co. v. Columbus/Central Ohio Building & Trades Council,* 73 Ohio St.3d 1, 14, 651 N.E.2d 1283, 1294 (1995).

ments to § 767 of the RESTATEMENT (SECOND) OF TORTS and recounted in *Kand Medical v. Freund Medical Products,* 963 F.2d 125, 128 (6th Cir.1992). *See Super Sulky,* 174 F.3d at 742. These factors are: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the proximity or remoteness of the actor's conduct to the interference; (6) the social interests in protecting the freedom of contract and the interference with such; and (7) the relations between the parties. *Kand,* 963 F.2d at 128. Ohio law imposes the burden of proving "lack of privilege" or "improper interference" on the plaintiff. *Super Sulky,* 174 F.3d at 742; *Doyle v. Fairfield Mach. Co.,* 120 Ohio App.3d 192, 217, 697 N.E.2d 667, 683 (1997). The nature of the actor's conduct is the chief factor that the court must consider. *Super Sulky,* 174 F.3d at 742; RESTATEMENT (SECOND) OF TORTS § 767, cmt. c.

The court below determined that New Holland's conduct was privileged. First, the district court emphasized the testimony of NationsRent's president and CEO that New Holland's national accounts program and procedure change came about in response to NationsRent's expressed desire to implement a direct purchase program.[2] Next, the district court addressed the seven *Kand* factors in turn, stating:

As for the first and most important factor, the above facts demonstrate that defendant's conduct in instituting direct sales was in response to NationsRent's stated interest in a strategy of direct purchase coupled with coop-advertising. As for the second factor, the current record suggests nothing more than that

defendant adopted the direct sales program in order to protect its position with NationsRent. Under the third factor, the interest of plaintiff was to continue as a dealer for purposes of selling defendant's equipment to NationsRent. The fourth factor recognizes defendant's interest in responding to the stated needs of NationsRent, and in maximizing its own economic benefits. As for the fifth factor, the proximity of defendant's conduct to the purported interference is close, however, it is coupled with NationsRent's corresponding conduct in pursuit of a direct purchasing arrangement. The sixth factor examines the social interests in preserving freedom of contract. In this regard, although plaintiff may have worked for many years to develop its profitable relationship with NationsRent, economic reality dictates that as circumstances changed, the parties remained free to pursue the most advantageous relationships as they presented themselves. Public policy does not require that plaintiff, defendant and NationsRent to [sic] remain locked in their earlier arrangement in order to protect plaintiff's interests, no matter how hard plaintiff worked to develop them. As to the seventh factor, plaintiff and defendant were parties to a series of dealership agreements. Significantly, these agreements expressly reserved defendant's right to sell its equipment directly to customers.

Because it determined New Holland's conduct to be privileged for these reasons, the district court found that no genuine issue of material fact existed with respect to Franklin Tractor's claim for tortious interference with a business relationship.

---

**2.** Franklin Tractor disagreed about the role NationsRent played in the creation of the national accounts program and the procedure change, maintaining that the idea of direct sales originated with New Holland and that NationsRent had not welcomed the changes.

Thus, the district court granted summary judgment in New Holland's favor.

We affirm because the dealership agreements between New Holland and Franklin Tractor expressly permitted New Holland's conduct. Although the district court did not give special emphasis to the seventh *Kand* factor—the relations between the parties—we find that the contracts between New Holland and Franklin Tractor carry dispositive weight in the circumstances of this case. The dealership agreements unquestionably allowed New Holland to bypass Franklin Tractor and sell directly to customers, including NationsRent, as the excerpts below show:

> The Dealer may make purchases from others without liability to [New Holland] but shall not be relieved of its obligations under this Agreement. (Standard Provisions of 1987 Dealer Agreement, ¶ 18(b).)

> [New Holland] may make sales, loans or leases of products to others without liability to the Dealer. (*Id.*)

> Direct sales: [New Holland] reserves the right to sell directly to eligible customers under the provisions of the Dealer Agreement. In such cases, Dealers may be asked to participate in the preparation, predelivery servicing and delivery arrangements to the purchaser. (New Holland Dealer Policy Manual, September 1997, Ch. 5, Sec. 1, Subject 3, p. 6, XI.) (incorporated by reference in Standard Provisions of 1987 Dealer Agreement, ¶ 1(i).)

> New Holland Construction reserves the right to sell, rent or lease product directly to end users ... including but not limited to governmental agencies, institutions or entities, educational or charitable institutions, rental companies and accounts classified by New Holland Construction as national accounts. New Holland Construction shall have no lia-

> bility to Dealer for any sales made pursuant to [this] ¶ 4(f). (1999 Dealer Agreement, ¶ 4(f).)

> New Holland Construction may make gifts, sales, loans, rentals or leases of products to others ... without liability to the Dealer. (1999 Dealer Agreement, ¶ 18(b).)

Franklin Tractor does not seriously dispute that these provisions remained operative and gave New Holland the contractual right to sell directly to NationsRent (indeed, the dealer agreements contained merger and integration clauses and required any modifications to be in a signed writing). But Franklin Tractor argues that New Holland's contractual rights cannot be examined "in a vacuum," and even if New Holland's conduct was specifically privileged by virtue of the contracts, its alleged interference was still improper. For support, Franklin Tractor cites *Thompson Trading, Ltd. v. Allied Breweries Overseas Trading Ltd.*, 748 F.Supp. 936 (D.R.I.1990), which criticized the defendant's argument "that invocation of a contractual right can not as a matter of law constitute tortious interference," reasoning instead that "[a] more appropriate statement of the law is that mere invocation of a contractual right does not as a matter of law negate a tortious interference claim." *Id.* at 943. *See also New England Multi–Unit Housing Laundry Ass'n v. Rhode Island Housing & Mortgage Fin. Corp.*, 893 F.Supp. 1180, 1192 (D.R.I.1995) ("Even where the defendant asserts that it was merely exercising its own contractual rights, its actions, if found to be unreasonable, can constitute improper interference with the plaintiff's contractual relationship.") (citing *Thompson Trading*).

*Thompson Trading* is readily distinguishable from the instant case. The plaintiff in *Thompson Trading* sued for,

among other things, tortious interference with a business relationship, when the defendant refused to consent to the plaintiff's attempt to assign its rights under an import and distribution agreement to a third party. The contract required the defendant's "consent in writing" but also stated that the defendant's consent was "not to be unreasonably withheld." 748 F.Supp. at 938. At issue in the case was the reasonableness of the defendant's withholding of consent, which the court concluded was a disputed question to be decided by a trier of fact. *Id.* at 942. The unresolved reasonableness requirement in the contract led the *Thompson Trading* court to hold that "[h]ere, the invocation of a contractual right, if found in fact to be unreasonable, can also constitute improper interference." *Id.* at 945.

In contrast to *Thompson Trading*, where the reasonableness limitation arose from the terms of the contract, the dealer agreements in the case at bar permitted New Holland to deal directly with Nations-Rent without any limitation as to reasonableness. Without such a limitation, we conclude that the New Holland's invocation of its contract rights negates the tortious interference claim. This case resembles *Wright v. MetroHealth Medical Center,* 58 F.3d 1130 (6th Cir.1995), where we upheld the district court's dismissal of a tortious interference with a business relationship claim. The lower court determined that the defendant's conduct was privileged based on the contract and noted that, like in this case, the plaintiff did not allege that the contract forbade the defendant's conduct. *Id.* at 1139. The contract between New Holland and Franklin Tractor affirmatively allowed for New Holland's actions. New Holland merely asserted its undisputed, unlimited contractual right to deal directly with NationsRent without liability. This conduct was privileged and was not tortious interference.

## CONCLUSION

Accordingly, the district court's entry of summary judgment in New Holland's favor is AFFIRMED.